**EAST FOOD & LIQUOR,
INCORPORATED,
Plaintiff–Appellee,**

v.

**UNITED STATES of America,
Defendant–Appellant.**

No. 94–1902.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1994.

Decided March 29, 1995.

Bernard M. Ellis (argued), Chicago, IL, for plaintiff-appellee.

James J. Kubik, Asst. U.S. Atty., Civil Div., Appellate Section, Chicago, IL, Frank W. Hunger, Office of the U.S. Atty. Gen., Robert S. Greenspan, Edward Himmelfarb (argued), Dept. of Justice, Civil Div., Appellate Section, Washington, DC, James B. Burns, Office of the U.S. Atty., Chicago, IL, for defendant-appellant.

Before COFFEY, GOODWIN * and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

East Food & Liquor, Inc., a Chicago food and liquor store, filed a complaint against the United States under 7 U.S.C. § 2023(a) and 7 C.F.R. § 279.10, seeking *de novo* judicial review of administrative action taken by the Food and Nutrition Service of the Department of Agriculture (the "Department of Agriculture" or the "FNS") withdrawing East Food's authorization to participate in the federal food stamp program for a period of four years. The FNS disqualified East Food & Liquor under 7 U.S.C. § 2018 and 7 C.F.R. § 278.1(n), on the basis of a determination by the Illinois Department of Public Health ("IDPH") that East Food violated regulations of the state administered Special Supplemental Food Program for Women, Infants, and Children ("WIC"), by charging the WIC program for food items not received by the program participant. The district court denied the government's motion for summary judgment, finding that the *de novo* judicial review required by 7 U.S.C. § 2023(a) entitled East Food & Liquor to challenge the facts underlying the state's disqualification of the store from the WIC program.

The district court certified its interlocutory order denying the government's motion for summary judgment for appeal, finding that its decision "involv[ed] a controlling question of law as to which there is a substantial ground for difference of opinion" and that

---

* Honorable Alfred T. Goodwin, Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation.

"[a]n immediate appeal ... may materially advance the ultimate termination of the litigation by eliminating the need for a trial." The court phrased the issue certified for appeal as follows:

> Whether a food store is precluded from relitigating the facts underlying its removal by the State of Illinois from the Special Supplemental Food Program for Women, Infants, and Children (WIC) when the store seeks *de novo* review, under 7 U.S.C. § 2023(a), of the Secretary of Agriculture's subsequent withdrawal of the store from the federal food stamp program on the basis of the state WIC removal.

This court granted the government's petition for permission to appeal from the district court's interlocutory order denying the government's motion for summary judgment, and we reverse.

## I. BACKGROUND

### A. *Statutory Background*

Based, in part, on a finding that "the limited food purchasing power of low-income households contributes to hunger and malnutrition among members of such households," Congress enacted the Food Stamp Act of 1964, as amended, 7 U.S.C. §§ 2011–2033, which provides low-income households with food stamp coupons to be used for the purchase of food from retail and wholesale stores. *Id.* at § 2011. Pursuant to this Act, Congress directed the Secretary of Agriculture (the "Secretary") to implement and administer the federal food stamp program, and delegated to the Secretary the authority to promulgate any regulations "necessary or appropriate for the effective and efficient administration of the food stamp program." *Id.* at § 2013(a) and (c). Although the Secretary of Agriculture is responsible for the promulgation of the necessary regulations and establishes national standards for participation in the food stamp program, each participating state bears the responsibility for the actual operation of the program. *Id.* at § 2020. The Secretary has delegated the authority to administer the food stamp pro-

gram to the FNS. 7 C.F.R. § 271.3. The FNS of the Department of Agriculture is charged with ensuring that participating food stores comply with the applicable food stamp program regulations. *Id.* at §§ 278.1, 278.6.

Notwithstanding the availability of assistance from the food stamp program, Congress determined that "substantial numbers of pregnant, postpartum, and breastfeeding women, infants, and young children" from low-income families were "at special risk with respect to their physical and mental health" because of inadequate nutrition and health care. 42 U.S.C. § 1786(a). To alleviate this public health concern, Congress enacted a separate but related program, the WIC program, which is designed to provide supplemental foods and nutrition education to eligible pregnant, postpartum, and breastfeeding women, as well as infants and young children. *Id.* at § 1786(a) and (c). Under the WIC program, state and local agencies receive federal cash grants to fund the distribution of food coupons to eligible participants. *Id.;* 7 C.F.R. § 246.1. WIC program participants receive coupons, which are marked with the specific type and quantity of food items to be purchased, and can be exchanged for those items at those food stores authorized to participate. 7 C.F.R. § 246.12. Under the WIC program, unlike the food stamp program, state agencies are charged with ensuring that participating food stores comply with all applicable program regulations.[1] The state agencies must monitor stores for WIC program violations, and are required to "establish policies which determine the type and level of sanctions to be applied against food vendors, based upon the severity and nature of the Program violations observed, and such other factors as the State agency determines appropriate." *Id.* at § 246.12(k)(1).

The Food Stamp Act provides for the disqualification of a food store from the food stamp program, "for a specified period of time ... on a finding [by the Secretary], made as specified in the regulations, that such store ... has violated any of the provi-

---

1. The WIC program enforcement regulations for the State of Illinois are found at 77

Ill.Admin.Code §§ 672.500–672.525.

sions of this chapter or the regulations issued pursuant to this chapter." *Id.* at § 2021(a). A store may be disqualified from participation in the food stamp program in one of two ways: (1) by violating food stamp program regulations, or (2) by violating WIC program regulations. *See id.* at §§ 2018, 2021(a); 7 C.F.R. §§ 278.1(n), 278.6. The regulations mandate the withdrawal of a food store's authorization to participate in the food stamp program if the store is disqualified from the WIC program for certain enumerated violations. Section 278.1(n)(1) of the food stamp program regulations provides that:

FNS shall withdraw the Food Stamp Program authorization of any firm which is disqualified from the WIC Program based in whole or in part on any act which constitutes a violation of that program's regulation and which is shown to constitute a misdemeanor or felony violation of law, or for any of the following specific program violations:

(i) Claiming reimbursement for the sale of an amount of a specific food item which exceeds the store's documented inventory of that food item for a specified period of time.

(ii) Exchanging cash or credit for WIC food instruments;

(iii) Receiving, transacting and/or redeeming WIC food instruments outside of authorized channels;

(iv) Accepting WIC food instruments from unauthorized persons;

(v) Exchanging non-food items for a WIC food instrument;

(vi) Charging WIC customers more for food than non-WIC customers or charging WIC customers more than current shelf price; or

(vii) Charging for food items not received by the WIC customer or for foods provided in excess of those listed on the food instrument.

7 C.F.R. § 278.1(n)(1). This regulation makes disqualification from the food stamp program mandatory, because a store that "has been determined, with due process, to have violated the WIC Program regulations has clearly demonstrated a lack of business reputation and integrity sufficient to warrant its removal from the Food Stamp Program." 52 Fed.Reg. 13220 (April 22, 1987); *see* 7 U.S.C. § 2018(a)(1)(C) (among the factors to be considered in determining the qualifications of a food stamp program applicant is "the business integrity and reputation of the applicant"). However, withdrawal of a store's authorization to participate in the food stamp program under 7 C.F.R. § 278.1(n) is permitted only if "prior to the time prescribed for securing review of [the] WIC disqualification action, the [store] was provided notice that it could be withdrawn from the Food Stamp Program based on the WIC violation." 7 C.F.R. § 278.1(n)(2).

B. *Factual and Procedural Background*

On April 1, 1992, the IDPH, the Illinois agency responsible for enforcement of WIC program regulations, cited East Food & Liquor store, a Chicago, Illinois food and liquor store, for a number of Class "A" violations of the WIC program, including exchanging cash or credit for food coupons, exchanging non-food items for food coupons, and charging the WIC program for foods not received by a program participant or for foods provided in excess of those listed on the coupons. The Notice of Class "A" Violations advised East Food of its opportunity for an administrative hearing before a hearing officer.[2] Accompa-

---

**2.** WIC program regulations set forth the minimum administrative due process protections state agencies must provide to participating food stores adversely affected by agency actions. 7 C.F.R. § 246.18(a). The aggrieved food store must receive written notification of the adverse action, which must identify the cause for and the effective date of the action. The agency must advise the store of its opportunity to appeal the adverse action and provide the store adequate advance notice of the time and place of the hearing. The store must have the opportunity to

present its case, including the opportunity to be represented by counsel, to review the case record prior to the hearing, and to confront and cross-examine adverse witnesses. The store is entitled to an impartial decisionmaker, and prompt written notification of the decision. *Id.* at § 246.18(b). Although the federal regulations do not require a full written opinion or formal findings of fact and conclusions of law, *id.* at § 246.18(b)(8), the Illinois Department of Public Health's own regulations require the hearing officer to make a full report of the hearing, includ-

nying this notice was a Notice of Termination and Opportunity for Hearing, which stated that "[East Food & Liquor] is hereby terminated from participation as a vendor in the State of Illinois WIC program effective April 30, 1992 for a minimum of four (4) years." This notice also advised East Food that "[t]his termination from WIC may result in withdrawal of authorization to participate in the Food Stamp Program per Section 278.1(o)(1) of the Food Stamp Program regulations." [3]

East Food & Liquor requested a hearing to challenge the alleged violations. After an evidentiary hearing at which East Food was represented by counsel,[4] the IDPH hearing officer found that on January 4, 1992, an East Food & Liquor cashier accepted a WIC coupon from an undercover state WIC investigator in exchange for cigarettes, and charged $11.83 for food items not received by the investigator. The hearing officer also found that on January 8, 1992, a cashier at East Food exchanged $7.00 in cash for a WIC coupon and charged $18.08 for food items not received by the investigator. The hearing officer concluded that East Food & Liquor had committed four Class "A" violations of the WIC program under 77 Ill.Admin.Code § 672.505(a)(2), (3), and (6), and recommended that the store be terminated from the WIC program for a period of four years. After an administrative review, the IDPH issued a final order adopting the hearing officer's findings of fact, conclusions of law, and recommendations. The IDPH disqualified East Food from the WIC program for four years, imposed a $10,000 fine, and ordered East Food to attend a compliance

training workshop. East Food & Liquor chose not to seek judicial review of this administrative order, although Illinois law provided the right to do so. *See* 735 ILCS 5/3–110.[5]

By letter dated March 17, 1993, the FNS advised East Food & Liquor that, pursuant to food stamp program regulations, its authorization to participate in the food stamp program would be withdrawn for a period of four years, to run concurrently with East Food's WIC program disqualification.[6] The FNS based its action on 7 C.F.R. § 278.1(n)(1)(vii), which mandates withdrawal of authorization to participate in the food stamp program for any store disqualified from the WIC program for "[c]harging for food items not received by the WIC customer or for foods provided in excess of those listed on the food instrument." East Food & Liquor submitted a written request for administrative review of this FNS action. By letter dated April 28, 1993, the FNS notified East Food that an FNS Administrative Review Officer upheld the FNS's action. The review officer explained that

> The FNS has published rules at Section 278.1(n) of the enclosed Food Stamp Program Regulations, indicating that a firm found to be in violation of any of the seven listed WIC violations shall be withdrawn from Food Stamp Program participation for a period to coincide with the WIC disqualification. This action is conditioned upon the firm having been notified during the WIC sanction process that WIC disqualification could lead to withdrawal of authorization from the Food Stamp Pro-

---

ing the officer's findings of fact, conclusions of law and recommendations. 77 Ill.Admin.Code § 672.660(a).

**3.** Section 278.1(o)(1) was recodified as section 278.1(n)(1) effective September 30, 1990.

**4.** East Food & Liquor's WIC hearing complied with all the procedural due process requirements of federal as well as state law. *See* 7 C.F.R. § 246.18; 77 Ill.Admin.Code §§ 672.500–672.525.

**5.** Under Illinois law, judicial review of a final administrative decision is based on the administrative record.

> The hearing and determination shall extend to all questions of law and fact presented by the

entire record before the court. No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct.

735 ILCS 5/3–110.

**6.** The letter stated that East Food & Liquor's withdrawal of authorization to participate in the food stamp program would become effective on the tenth calendar day following the store's receipt of the letter.

gram. The letter to you of April 1, 1992 from the State of Illinois Department of Public Health clearly indicates this fact on page 1, paragraph 4.

East Food & Liquor filed this action under 7 U.S.C. § 2023(a), which provides that a suit challenging suspension from the food stamp program "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." The government filed a motion for summary judgment, asserting that *de novo* review under section 2023(a) required the court to determine only whether the FNS's decision to withdraw East Food's authorization to participate in the food stamp program was made in accordance with federal regulations, specifically 7 C.F.R. § 278.1(n). The government contended that "*de novo* review does not mean that the court should make a determination of whether the violations which form the basis of the WIC program disqualification by the State of Illinois occurred." The district court disagreed, and denied the government's motion for summary judgment. The court explained:

> We have no quarrel with the notion that a store is entitled to one administrative hearing—not two. The WIC program is related to the food stamp program. We think FNA [sic] is well within the ambit of its authorized discretion in adopting the WIC hearing as its own. Indeed, WIC provides for a full evidentiary hearing, well beyond the administrative review under the food stamp program.
>
> *     *     *     *     *     *
>
> We are troubled, however, by the "*de novo* " requirement of 7 U.S.C. § 2023. If there had been no WIC proceeding and FNS had itself determined the underlying violations, it is clear that this court would have to make an independent determination as to whether or not there was a violation. It may or may not be good policy to involve the courts in trials over whether or not a participant got a pack of cigarettes for food stamps, but the policy is up to Congress, not the agency or the courts. If a store is found in violation in a WIC proceeding, and it can thereafter obtain a judicial determination of *that* viola-

tion, we doubt that the store can obtain a second *de novo* look when FNS disqualifies on the basis of the WIC disqualification. The § 2023 *de novo* trial can be in either state or federal court. The WIC hearing regulations do not appear, however, to provide for an independent judicial determination unless, perhaps, state law should itself so provide. *See* 7 C.F.R. § 246.18(d).

> We do not believe that FNS can avoid an independent judicial determination by relying upon a state procedure that does not permit such a determination. Congress has provided for a possible two bites: an administrative review and a judicial trial. FNS need not provide three; it can accept the state proceeding as the administrative bite, but we do not think it can ignore the statutory direction that a *de novo* trial be, at some point, an available option.

The district court certified this interlocutory order denying the government's motion for summary judgment for appeal.

## II.  DISCUSSION

### A.  *The Standard of Review*

We review the district court's decision to deny summary judgment *de novo*. *Jackson v. Bunge Corp.*, 40 F.3d 239, 245 (7th Cir. 1994). Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In determining whether summary judgment is appropriate, we must view the evidence, and draw all reasonable inferences from the evidence, in the light most favorable to the non-moving party. *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir.1992); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986).

### B.  *Administrative Issue Preclusion*

The United States argues that section 2023(a)'s *de novo* review requirement limits

the court's review to only those determinations made by the Secretary of Agriculture in withdrawing a store's authorization to participate in the food stamp program. In other words, the government contends that the district court can review only whether the store's WIC violations fell within one of the enumerated categories in 7 C.F.R. § 278.1(n)(1) requiring mandatory suspension, and whether the store received adequate notice that disqualification from the WIC program could trigger mandatory withdrawal of authorization to participate in the food stamp program. We agree.

■ In *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986), the Supreme Court declared that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an opportunity to litigate,' ... federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Elliott*, 478 U.S. at 799, 106 S.Ct. at 3226 (quoting *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)). Giving preclusive effect to an administrative agency's factfinding serves to "enforce repose," *Utah Construction & Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1560, and preserve the integrity of administrative adjudications. The doctrine of administrative issue preclusion

> is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.

*Astoria Federal Savings and Loan Assoc. v. Solimino*, 501 U.S. 104, 107–08, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991). This general common law rule of administrative issue preclusion applies unless Congress evinces a contrary intention. *Elliott*, 478 U.S. at 794–99, 106 S.Ct. at 3224–26; *Solimino*, 501 U.S.

at 108, 111 S.Ct. at 2169–70 (quoting *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783, 72 S.Ct. 1011, 1014, 96 L.Ed. 1294 (1952)) ("where a common-law principle is well established, as are the rules of preclusion, ... the courts may take it as given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident' ").

■ Neither the plain language of section 2023(a) nor its purpose suggests that Congress intended to foreclose reliance on the common law rule of administrative issue preclusion. Section 2023(a) provides that "[t]he suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue,...." Section 2023(a), by its own terms, limits the scope of the *de novo* review to the validity of the Secretary's administrative action. The "administrative action in issue" does *not* refer to the state's administrative adjudication of the store's WIC violations; judicial review of the state's administrative action is provided by state statute. *See* 735 ILCS 5/3–110.

This court has previously noted that section 2023(a) requires *de novo* review of administrative actions concerning the eligibility of stores to participate in the food stamp program because the administrative review process generally provides for *no* opportunity for a full evidentiary hearing. *McGlory v. United States*, 763 F.2d 309, 310–11 (7th Cir.1985). For example, where a store is disqualified from the food stamp program because of a violation of food stamp program regulations (as opposed to a violation of WIC program regulations), the "administrative action in issue" is the FNS's determination, made on written submissions of evidence without a full due process evidentiary hearing, that the store violated food stamp program regulations. *See* 7 C.F.R. § 278.6(b) and (c) (any store considered for disqualification "shall have full opportunity to submit to FNS information, explanation, or evidence concerning any instances of noncompliance.... The letter of charges, the response, and any other information available to FNS shall be reviewed and considered by

[FNS], which shall then issue the determination"). In such a case, section 2023(a) provides the store with its *only* opportunity for an evidentiary hearing.

> The trial [of a store's alleged food stamp violations] is "de novo"—that is to say, on a new evidentiary record. Because the statute does not provide for any evidentiary hearing at the administrative level, ... it gives each participant a right to trial "de novo." This trial is the one and only hearing a participant in the program receives.

*McGlory*, 763 F.2d at 310–11 (citing *Save More of Gary, Inc. v. United States*, 442 F.2d 36 (7th Cir.), *cert. dismissed*, 404 U.S. 987, 92 S.Ct. 535, 30 L.Ed.2d 549 (1971)); *see also Freedman v. United States*, 926 F.2d 252, 261 (3d Cir.1991) (section 2023(a) "requires the district court to examine the entire range of issues raised and not merely to determine whether the administrative findings of the agency are supported by substantial evidence").

▆ In contrast, where, as in this case, a store's authorization to participate in the food stamp program is withdrawn because of WIC program violations, the "administrative action in issue" is the FNS's determination that the store's WIC violation was one requiring suspension under 7 C.F.R. § 278.1(n)(1) and that the store received adequate notice of its potential withdrawal from the food stamp program under 7 C.F.R. § 278.1(n)(2). Because the state agency, here the IDPH, provided a full due process evidentiary hearing on charges of WIC program violations, there is no need for a second evidentiary hearing in the district court to determine whether those WIC violations actually occurred. *See Utah Construction & Mining Co.*, 384 U.S. at 422, 86 S.Ct. at 1560 ("[t]here is neither need nor justification for a second evidentiary hearing on these matters already resolved").

▆ The district court ruled as it did out of a concern that a store suspended from the food stamp program based on WIC program violations might never receive "an independent judicial determination" of the underlying violations. However, section 2023(a) does not guarantee to a store "an independent judicial determination" of the facts underlying a store's state-adjudicated WIC violations. Federal and state regulations provide a comprehensive administrative appeal process for stores charged with WIC program violations. *See supra* n. 2. East Food & Liquor had the opportunity to seek judicial review of its WIC violations in state court. *See* 735 ILCS 5/3–110. However, the state court was not required to conduct an independent review of the evidence, because the factual findings of the IDPH are given preclusive effect by Illinois courts except in those rare instances when the IDPH acted in "an arbitrary and capricious manner" or rendered a decision "against the manifest weight of the evidence." *See id.; Alden Nursing Center—Morrow, Inc. v. Lumpkin*, 259 Ill. App.3d 1027, 198 Ill.Dec. 7, 10–11, 632 N.E.2d 66, 69–70 (1994).

> Administrative agencies are given wide latitude in exercising the discretion with which they are vested, and their findings of fact are considered *prima facie* true and correct.... Courts may not interfere with this discretionary authority unless it was exercised in an arbitrary and capricious manner or the decision was against the manifest weight of the evidence.

*Id.* (citations omitted); *see also McCulla v. Industrial Commission*, 232 Ill.App.3d 517, 173 Ill.Dec. 901, 904, 597 N.E.2d 875, 878 (1992) ("[g]enerally, administrative agency decisions have *res judicata* and collateral estoppel effect where the agency's determination is made in proceedings which are adjudicatory, judicial or quasi-judicial in nature"). A state court's final judgment entered after judicial review on an administrative record is entitled to full faith and credit in federal court. *See* 28 U.S.C. § 1738. Thus, if we were to interpret section 2023(a) as requiring an independent judicial determination of the facts underlying a store's WIC disqualification, we would necessarily have to direct district courts to reexamine final state court judgments, in contravention of principles of comity as well as the statutory mandate to grant full faith and credit to final state court decisions. The district court's interpretation of section 2023(a)'s *de novo* review requirement would thus engender an irreconcilable conflict between section

2023(a) and the statutory mandate to grant full faith and credit to final state court judgments. We thus refuse to adopt the district court's reasoning, and find instead that Congress, in enacting section 2023(a), did not intend to foreclose application of the traditional common law principle of administrative issue preclusion.

East Food & Liquor is precluded from relitigating the facts underlying its WIC violations in federal court if (1) the IDPH acted in a judicial capacity; (2) and resolved disputed issues of fact properly before it; and (3) the parties had an adequate opportunity to litigate those issues. *Buckhalter v. Pepsi–Cola General Bottlers, Inc.,* 820 F.2d 892, 895 (7th Cir.1987). There is no doubt that the IDPH resolved disputed issues of fact properly before it and that East Food had an adequate opportunity to litigate the facts on which its WIC program violations were based. The IDPH was the state agency responsible for providing administrative adjudications of charges of WIC program violations. East Food was represented by counsel throughout the WIC hearing process, pursued its opportunity for administrative review, and also had the right to seek judicial review in state court of its WIC program disqualification, although it chose not to appeal. *See Reed v. AMAX Coal Co.,* 971 F.2d 1295, 1300 (7th Cir.1992).

The record also demonstrates that the IDPH was "acting in a judicial capacity" when it determined that East Food & Liquor had violated WIC program regulations. The rules and procedures followed by the IDPH clearly incorporated all the essential elements of an adjudication, *see Crot v. Byrne,* 957 F.2d 394, 396 (7th Cir.1992), including the opportunity to be represented by counsel, pretrial discovery, the opportunity to present witnesses and exhibits, the opportunity to cross-examine adverse witnesses and object to the admission of evidence, and the right to an impartial decisionmaker. *Reed,* 971 F.2d at 1300. Thus, the administrative adjudication of East Food's WIC violations satisfied each of the prerequisites to the application of administrative issue preclusion.

## C. *De Novo Review of the Secretary of Agriculture's Action*

Section 2023(a)'s *de novo* review of the withdrawal of a store's authorization to participate in the food stamp program is limited to review of the two determinations made by the Secretary, namely, (1) whether the store's WIC violation fell within one of the enumerated categories in 7 C.F.R. § 278.1(n)(1) requiring mandatory withdrawal of food stamp program authorization; and (2) whether the store received adequate notice that disqualification from the WIC program could trigger suspension from the food stamp program. *See Rahim v. United States,* 805 F.Supp. 676, 679–80 (E.D.Wis. 1992); *Russell's Old Trading Post, Inc. v. United States,* 783 F.Supp. 395, 398 (N.D.Ind.1992); *De La Nueces v. United States,* 778 F.Supp. 191, 196 (S.D.N.Y.1991). The undisputed facts of this case reveal, as the district court found, that the FNS properly determined that East Food & Liquor's WIC violations—charging the WIC program for food items not received by the WIC customer—were violations which would subject East Food to a mandatory disqualification from the food stamp program under 7 C.F.R. § 278.1(n)(1)(vii). The undisputed facts also reveal, as the district court found, that East Food received adequate notice that disqualification from the WIC program could trigger mandatory withdrawal of authorization to participate in the food stamp program. The Notice of Termination and Opportunity for Hearing, dated April 1, 1992, advised East Food & Liquor that "[t]his termination from WIC may result in withdrawal of authorization to participate in the Food Stamp Program per Section 278.1(o)(1) of the Food Stamp Program regulations." Based on the record and evidence before us, we are convinced that the FNS's action in withdrawing East Food & Liquor store's authorization to participate in the federal food stamp program was proper.

## III. CONCLUSION

The question certified for interlocutory appeal is answered in the affirmative: a food store *is* precluded from relitigating the facts underlying its disqualification by the

state from the WIC program when the store seeks *de novo* review, under 7 U.S.C. § 2023(a), of the withdrawal of the store's authorization to participate in the federal food stamp program on the basis of the state WIC proceeding. Accordingly, the district court's interlocutory order denying the government's motion for summary judgment is REVERSED and the case is REMANDED to the district court with directions to enter an order granting summary judgment in favor of the United States.