70 F.3d 1275
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Andrew WALKER, Plaintiff-Appellant,
v.
S.D. PACIOREK, and M.A. McElmurry, Jr., Defendants-Appellees.
 No. 94-2134.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 14, 1995.[1]
Decided Nov. 21, 1995.
 
 Before FLAUM, MANION and DIANE P. WOOD, Circuit Judges.
 
 ORDER
 
 1
 Andrew Walker, a federal prisoner housed at Marion, Illinois, filed a pro se civil rights action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), alleging that defendants, who are prison officials, violated his due process rights when they kept him in disciplinary segregation ten days longer than the term imposed by the disciplinary officer, instead of transferring him to administrative segregation for those ten days. A magistrate judge recommended summary judgment in favor of defendants, concluding that defendants were protected by qualified immunity on the basis that there was no liberty or property interest, since granting privileges to inmates in administration segregation was discretionary. The district court made a de novo review following the filing of Walker's objections, and granted defendants' motion for summary judgment. The district court found that Walker had failed to show any personal involvement by either defendant.
 
 
 2
 The record shows that after refusing to accept a program assignment[2] in April 1990, Walker served a 30-day detention in disciplinary segregation.[3] Upon completion of the 30-day term, when ordered to return to the general population on May 24, 1990, Walker refused. The staff issued an incident order[4] and placed Walker on administrative detention status pending a disciplinary hearing. Although his status had changed, Walker remained in the same cell. On June 13, 1990, a disciplinary hearing was held and the hearing officer determined that plaintiff had committed the infraction.[5] Walker was sentenced to serve another 30-day disciplinary segregation term.[6]
 
 
 3
 On July 13, 1990, Walker completed the 30-day term and was once again ordered to enter the general population, and he again refused. He was again given an incident report[7] and placed on "administrative segregation" status pending a disciplinary hearing. He was not physically transferred to a different cell. Instead, he remained in the same cell for an additional ten days,[8] the period of time he complains of in this suit.
 
 
 4
 An affidavit by defendant Paciorek states that at the time there were "no separate ranges for administrative detention and disciplinary segregation in lower G-Unit," where Walker was housed, and that Walker was in the lower G-Unit due to a renovation work in the prison. (Paciorek affidavit, para. 9, 14)
 
 
 5
 Walker contends that he received fewer privileges during that ten-day period than if had been in administrative segregation. He complains that he was not permitted to have his own deodorant, body lotion, toothpaste, and hair dressing.[9] Walker sought an injunction requiring that he be permitted to possess his personal hygiene items and educational materials while in segregation, and $1,050 in damages.
 
 
 6
 Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). All reasonable inferences drawn from the evidence must be viewed in the light most favorable to plaintiff. Courtney v. Biosound, Inc., 42 F.3d 414, 418 (7th Cir.1994). We review a summary judgment de novo. East Food & Liquor, Inc. v. United States, 50 F.3d 1405, 1410 (7th Cir.1995).
 
 
 7
 During the ten-day period of additional confinement in segregation, defendant Paciorek was on leave. As to defendant McElmurry, Walker has failed to produce any evidence that he was personally involved in the decision. The district court was correct to find that summary judgment in favor of defendants was proper where plaintiff had failed to demonstrate defendants' personal involvement in the decision to hold plaintiff in disciplinary confinement for the ten-day period. See Black v. Lane, 22 F.3d 1395, 1401 (7th Cir.1994).
 
 
 8
 In addition, we find that Walker has failed to establish a liberty interest requiring due process protection. States may create liberty interests protected by the due process clause in certain circumstances. Wolff v. McDonnell, 418 U.S. at 555. No liberty interest in remaining free from segregation has been created here. Since the district court entered its order in this case, the Supreme Court announced a new rule in Sandin v. Connor, 115 S.Ct. 2293 (1995), which provides that a liberty interest in remaining in the general population arises only if placement in segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 115 S.Ct. at 2300 (citations omitted).[10] Instead of focusing on the language of state regulations or statutes in a search for magic words that might create a liberty interest, the focus has shifted to examining the "nature of the interest" purported to be created by the state. Sandin, 115 S.Ct. at 2299.[11]
 
 
 9
 In Sandin, the Court found that there was no liberty interest in the right to be free from segregation. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." 115 S.Ct. at 2301. Walker's ten-day stay in segregation obviously falls within the type of less-than-30-days confinement that a prisoner can expect. Sandin, 115 S.Ct. at 2301. See also Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir.1995) (six months of segregation was not the type of term which would fall outside the expected scope of the inmate's sentence).
 
 
 10
 Most notably, Walker has repeatedly refused to leave disciplinary segregation on the basis that the prison officials refused to grant his request to be placed in protective custody (a decision he does not challenge here). Walker apparently wants to continue an endless, repetitive cycle of 30 days in disciplinary segregation, a refusal to return to the general population, a few days in administrative segregation awaiting the next disciplinary hearing, and then a new 30-day term in disciplinary segregation. Walker has made it clear that his personal preference is to not be housed with the general population. As the Court recently stated in Sandin, "[a]lthough we do not think a prisoner's subjective expectations dispositive of the liberty interest analysis, it does provide some evidence that the conditions suffered were expected within the contour of the actual sentence imposed." 115 S.Ct. at 2301 n. 9.
 
 
 11
 Here, we are not concerned with the difference between disciplinary segregation and conditions in the general population. Instead, Walker relies entirely on the differences between administrative segregation and disciplinary segregation. The conditions are the same except that the warden may, "if consistent with available resources and the security needs of the unit ... give an inmate housed in administrative detention the same general privileges given to inmates in the general population." 28 C.F.R. Sec. 541.22(d). These additional privileges might include the opportunity to participate in educational programs, to receive commissary privileges, to have a reasonable amount of personal property, to have a radio, and to use a telephone. 28 C.F.R. Secs. 540.104, 541.22(d).[12] Like in Sandin, therefore, Walker's attempt at distinguishing the two types of segregation is not relevant, since the "disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody." Sandin, 115 S.Ct. at 2301. The "privileges are comparably limited." Sandin, 115 S.Ct. at 2301 n. 7. This type of change in custodial status, which does not "work a major disruption in [the inmate's] environment," Sandin, 115 S.Ct. at 2301, does not create the type of deprivation which requires federal due process protection. Sandin, 115 S.Ct. at 2300-02.
 
 
 12
 Moreover, the fact that Walker was physicially in the same cell does not alter the type of privileges he was entitled to, since he was officially on "administrative segregation" status.[13] Walker makes no allegation that the cells in disciplinary segregation were physically different than a cell he expected to receive while on administrative segregation status.
 
 
 13
 Finally, the Court's admonition against excessive federal judicial involvement in prison administration is particularly significant in a case such as this, where the federal courts would be attempting to discern subtle changes between several types of segregation during renovation projects at the prison. See Sandin, 115 S.Ct. at 2299 ("the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment" especially applicable with regard to "the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims" under Sec. 1983). The punishment of Walker, as an incarcerated prisoner who repeatedly refused to follow orders of correctional officers, is precisely the type of action by prison officials which merely "effectuates prison management and prisoner rehabilitative goals." Sandin, 115 S.Ct. at 2301 (distinguishing the imposition of restraints on prisoners from restraints on free citizens).
 
 
 14
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). Plaintiff submitted a statement indicating that the matter could be decided without oral argument. Accordingly, the appeal is submitted on the record and the briefs
 
 
 [2]
 The disciplinary report describes an order that Walker "accept his program assignment and go to general population." Walker said, "I won't go." There is no further indication in the record as to the reason for the refusal
 
 
 [3]
 Eight days into the 30-day term, Walker was transferred from the Special Housing Unit to the G-Unit "as a result of renovations to the Special Housing Unit." He was placed on A-Range, Cell 10, with approximately 22 days of disciplinary segregation remaining. (Paciorek affidavit, par. 9)
 
 
 [4]
 The incident report indicates that a correctional officer ordered Walker "to accept his program assignment and go to the general population." Walker refused, stating, "No, I won't go."
 
 
 [5]
 The hearing officer's report states: "[T]he inmate's written statement has admitted that he has never accepted a general population assignment and has requested protective custody. The inmate's claims for protective custody has been determined to be unfounded and has resulted in disciplinary actions on each occasion of his refusal." The report concludes that Walker's "continued refusal to accept his program assignment in the general population is considered manipulatory in nature and hampers efficient unit management."
 
 
 [6]
 Additional punishment included 55 days' forfeiture of statutory good time, and 90 days of commissary and radio restriction. Because the deprivation of good time credits may "affect the duration of his sentence," Sandin v. Connor, 115 S.Ct. 2293, 2302 (1995), due process may require the procedures set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). Nevertheless, Walker has not challenged the punishments imposed, including the forfeiture of good time credits
 
 
 [7]
 The incident report merely states that Walker refused to go to general population, again stating, "I won't go."
 
 
 [8]
 The record is not clear as to what occurred after July 23, 1990, but Walker does not complain of any events after that date
 
 
 [9]
 In reviewing Walker's claim that he was denied the use of certain personal items, we note that he does not attempt to raise an eighth amendment claim regarding the conditions under which he is confined. Cf. Harris v. Fleming, 839 F.2d 1232 (7th Cir.1988). Walker merely uses the absence of personal property as a means of comparing disciplinary and administrative segregation
 
 
 [10]
 The Court did not "technically" overrule Hewitt v. Helms, 459 U.S. 460 (1983), where the Court found a liberty interest but no due process violation in confinement to administrative segregation. See Sandin, 115 S.Ct. at 2300, n. 5. One court recently noted, however, that "[i]t is unlikely ... that administrative segregation can give rise to any constitutional claim after Sandin. " Orellana v. Kyle, 65 F.3d 29, 32 n. 2 (5th Cir.1995)
 
 
 [11]
 The Sandin rule applies retroactively, because the Court applied the newly announced rule to the parties in that case. See Harper v. Virginia Department of Taxation, 113 S.Ct. 2510, 2517 (1993) (no court may refuse to apply rule of federal law retroactively once the Supreme Court applies it to the parties before it)
 
 
 [12]
 This case is to be distinguished from Whitford, 63 F.3d at 533, 537, where we found it necessary to remand for further factfinding because the record was "not sufficiently developed for us to determine whether the conditions of Whitford's confinement were significantly altered when he was placed in segregation."
 
 
 [13]
 Walker's argument that the district court erred in not permitting him to take additional discovery prior to entering a decision on summary judgment need not be addressed further, since the intended discovery was to be used as additional support for the argument that Andrew was in disciplinary, not administrative, segregation--an argument we have found not relevant