76 F.3d 381
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Wardell STANCIL, Plaintiff-Appellant,
v.
MOO & OINK, INC., Defendant-Appellee.
 No. 95-2342.
 United States Court of Appeals, Seventh Circuit.
 Argued Dec. 13, 1995.
Decided Jan. 24, 1996.
Rehearing Denied March 5, 1996.
 
 Before ESCHBACH, COFFEY and EVANS, Circuit Judges.
 
 ORDER
 
 1
 Wardell Stancil filed a racial discrimination claim against his former employer, Moo & Oink, Inc., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The district court entered summary judgment in favor of the defendant and Stancil appeals. We affirm.
 
 
 2
 In March 1988, Stancil filed a charge with the Illinois Department of Human Rights (IDHR) after Moo & Oink issued a written disciplinary warning to him for placing spoiled neck bones in a display case. He also received a verbal warning for being 40 minutes late for work.
 
 
 3
 While the charge was pending before the IDHR, in July 1988, Stancil injured his ankle at work and went on medical leave for over a month. When he returned to work he was assigned to duties that did not require walking up and down stairs. Because the ankle problems continued, a physician for Moo & Oink's insurance company instructed Stancil to elevate his ankle for ten minutes each hour. Stancil refused to comply with these instructions, and on September 30, 1988, he was suspended, Stancil filed a union grievance, and later, after leaving the grievance meeting with Joseph Richardson, his union steward (who, like Stancil, was an African-American), Stancil declared: "I ought to get my gun and shoot all you motherfuckers. Especially you." On October 14, 1988, Moo & Oink fired Stancil for making the threat.
 
 
 4
 On October 18, 1988, Stancil filed a second charge of discrimination with the IDHR, alleging that he had been suspended and discharged in retaliation for filing and amending his March 31, 1988, charge of discrimination. On December 20, 1989, he also filed a complaint of discrimination with the Illinois Human Rights Commission (IHRC).[1]
 
 
 5
 A state administrative law judge held a hearing in July 1991. The ALJ concluded that the five-day suspension was in retaliation for plaintiff's filing a claim and therefore was a violation of the Illinois Human Rights Act. The termination claim was resolved against Stancil. The ALJ found that Moo & Oink's decision to terminate Stancil grew out of the threat to harm co-workers. Both sides appealed to the full IHRC.
 
 
 6
 On November 22, 1993, the IHRC disagreed with the ALJ's findings regarding the suspension and dismissed plaintiff's complaint with prejudice, finding that neither the suspension nor the termination constituted discriminatory retaliation. He did not appeal to the Illinois courts.
 
 
 7
 Stancil also filed a complaint with the federal EEOC, and on January 28, 1994, it found that Moo & Oink had not violated Title VII. In May 1994, Stancil filed the present Title VII action, alleging racial discrimination and retaliation for his pursuit of the claims. It was this complaint that was dismissed by the district court's grant of summary judgment to Moo & Oink.
 
 
 8
 Stancil argues that in a Title VII case involving no state court review of an administrative state agency's findings, those findings have no preclusive effect, and this is true. University of Tennessee v. Elliott, 478 U.S. 788, 795 (1986); Buckhalter v. Pepsi-Cola General Bottlers, 820 F.2d 892, 894-95 (7th Cir.1987). Cf. Kremer v. Chemical Construction Corp., 456 U.S. 461, 468-70 (1982) (state agency decision that has been reviewed by a state court receives from a federal court the same collateral estoppel effect that the decision would receive in that state); Brye v. Brakebush, 32 F.3d 1179, 1183 (7th Cir.1994) (Elliott does not apply in Title VII case where state administrative agency decision was reviewed and state court entered a judgment, even though it did not address the merits; court concludes that Wisconsin law of res judicata applies); Lolling v. Patterson, 966 F.2d 230, 236 (7th Cir.1992) (state court considered merits of administrative agency decision, and thus preclusion applies); Pirela v. Village of North Aurora, 935 F.2d 909 (7th Cir.1991) (same).
 
 
 9
 Ordinarily, the policies of preclusion, often called administrative estoppel, prevent relitigation in federal court of an adjudicatory decision reached by a state agency. See Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991) ("losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise"); East Food & Liquor, Inc. v. United States, 50 F.3d 1405, 1410-12 (7th Cir.1995) (decision of Illinois Department of Public Health precludes relitigation of claims in federal court, even though no Illinois court reviewed the state administrative decision); Harper v. Godfrey Co., 45 F.3d 143, 148-49 (7th Cir.1995) (decision of Wisconsin Unemployment Compensation Division precludes relitigation of damages claim, even though no Wisconsin court reviewed the state administrative decision); 28 U.S.C. § 1738 (federal courts must give full faith and credit to state court decisions). In § 1983 cases, for example, there is "[n]othing ... remotely express[ing] any congressional intent to contravene the common-law rules of preclusion." Solimino, 501 U.S. at 110, quoting Elliott, 478 U.S. at 797, quoting Allen v. McCurry, 449 U.S. 90, 97-98 (1980).
 
 
 10
 The preclusion rules, however, are different in certain areas of the law. Title VII cases are one of the exceptions because Congress has directed the EEOC to only accord "substantial weight" to state or local authorities' findings in employment discrimination decisions. Elliott, 478 U.S. at 796, quoting 42 U.S.C. § 2000e-5(b). Thus, in Title VII cases, where no state court has reviewed the administrative decision, the normal policies of preclusion do not apply. Elliott, 478 U.S. at 795-96. Moo & Oink, however, asks us to give the Illinois administrative findings preclusive effect. This is an odd request, for to do so we would have to sidestep the Supreme Court's decision in Elliott and return to our opinion in Buckhalter v. Pepsi-Cola General Bottlers, 768 F.2d 842 (7th Cir.1985) (Buckhalter I ), despite the fact that it was vacated by the Supreme Court, 478 U.S. 1017 (1986), and vacated by us on remand from the Supreme Court, Buckhalter, 820 F.2d 892 (7th Cir.1987) (Buckhalter II ). It would also make us guilty of not following the rules that apply to a hierarchical judiciary. See Heath v. Varity Corp., --- F.3d ---- (7th Cir. Nov. 30, 1995). We must decline the defendant's invitation. That's good for Stancil, but he still loses the suit.
 
 
 11
 The reason why Stancil still comes up short is that the district court did not give preclusive effect to the state agency findings. Judge Holderman never mentioned res judicata or collateral estoppel, even though the parties argued it in their summary judgment motions and responses. What the judge did was rely on Moo & Oink's Local Rule 12(m) statement of undisputed facts, which he was entitled to do since Stancil failed to file his own statement of undisputed facts under the rule. The rule provides that "all material facts set forth in [the opponent's] statement will be deemed to be admitted." We have "repeatedly upheld the strict enforcement of these [local] rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts." Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994) (collecting cases); see also LaSalle Bank Lake View v. Seguban, 54 F.3d 387, 389 (7th Cir.1995); Schultz v. Serfilco, Ltd., 965 F.2d 516, 518 (7th Cir.1992). Moreover, it is not enough for a nonmovant to slip in his statement of material facts when he argues "key issues of factual dispute" in a response to the motion for summary judgment. Knox v. McGinnis, 998 F.2d 1405, 1408 n. 8 (7th Cir.1993) ("this practice does not comply with the stringent requirements of the Northern District's local rule, and when presented with a non-conforming factual narrative, the district court may deem admitted the factual assertions of the moving party").
 
 
 12
 Although, as we have noted, the state agency findings were not entitled to preclusive effect, they were still admissible as evidence. See Solimino, 501 U.S. at 113-14 (state administrative findings may be entered into evidence at trial); Chandler v. Roudebush, 425 U.S. 840, 863 n. 39 (1976) (same). A state administrative agency's findings are also accorded "great weight" in various contexts. Darden v. Illinois Bell Telephone Co., 797 F.2d 497, 504 (7th Cir.1986) (while not entitled to complete deference by federal court, labor arbitrator's decision on Title VII claim was entitled to great weight where federal court had before it the same evidence that had been before the arbitrator). The EEOC, as we previously noted, is required to give "substantial weight" to state administrative findings. Solimino, 501 U.S. at 110; Elliott, 478 U.S. at 795.
 
 
 13
 Now it's true that many of the "undisputed facts" listed by Moo & Oink in its submission to the district court match the findings of the state agency. But why should that be considered unusual in a case like this? After all, this dispute involves an employment decision made eight years ago in 1988. Before reaching federal court as a Title VII suit, the dispute traveled through the Illinois Department of Human Rights, where a three-day trial was held; the Illinois Human Rights Commission, where a full de novo review was held; and the federal Equal Employment Opportunity Commission. Neither Moo & Oink, who won in the agency proceedings, nor the district court could be expected to ignore evidence properly presented in those proceedings. In fact, the parties actually, and appropriately, skipped discovery in federal court because extensive discovery and a trial had already occurred. At the state trial the parties introduced over 35 exhibits, argued numerous evidentiary issues, presented witnesses, and made a record that produced a transcript over 600 pages long.
 
 
 14
 The district court, we think, simply viewed the case as though the state agency never made a final decision; it drew its own conclusions from the depositions, trial testimony, affidavits, and numerous exhibits. This was proper; it was not a surreptitious means of giving the IRHC proceedings preclusive effect in violation of Elliott.
 
 
 15
 In any event, notwithstanding Stancil's default on the local rule, Judge Holderman did look beyond Moo & Oink's statement of "undisputed fact" and considered Stancil's "evidence" that: (1) he did not want to take the medically directed breaks (resulting in suspension), and (2) he did not threaten anyone (resulting in termination). Having decided what "facts" the district court could and did consider, we go on to decide the appropriateness of summary judgment.
 
 
 16
 Summary judgment is proper where the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file establish that no genuine issues of material facts remain and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review summary judgment de novo. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The summary judgment standard mirrors that of a directed verdict test, i.e., if what is contained in the affidavits, pleadings, depositions, and other materials were all the evidence before the court, and upon such evidence there would be nothing left to go to a jury and the court would be required to direct a verdict, then summary judgment should be entered. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986); Perfetti v. First Nat'l Bank of Chicago, 950 F.2d 449, 456 (7th Cir.1991).
 
 
 17
 Stancil depends upon the indirect method of proof under the burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). His prima facie case is shown by the fact that he falls within the protected class, he claims to have performed his job satisfactorily, and he was suspended and later terminated, and he asserts that the Hispanic supervisors favored only Hispanic employees. McDonnell Douglas, 411 U.S. at 802-03.
 
 
 18
 Moo & Oink, faced with a prima facie case against it, has shown a legitimate nondiscriminatory reason for its decisions. McDonnell Douglas, 411 U.S. at 802-03. In regard to the five-day suspension, it was reasonable to conclude Stancil was being insubordinate in refusing to follow medical orders to rest and elevate the ankle ten minutes each hour; as the employer, it had an interest in preventing the aggravation of an employee's work-related ankle injury. See, e.g., Kirk v. Federal Property Management Corp., 22 F.3d 135, 137 (7th Cir.1994) (insubordination is a legitimate nondiscriminatory reason for discharging an employee); Carter v. City of Miami, 870 F.2d 578, 584 (11th Cir.1989) (same). Defendant did all it could be expected to do in accommodating plaintiff's injury by assigning him work that would be least stressful on the ankle.
 
 
 19
 In regard to the termination of employment, it was more than reasonable for Moo & Oink to conclude that Stancil's threat to his union steward was cause for dismissal. See, e.g., Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1132-33 (7th Cir.1994) (threatening two co-workers with hunting knife provides sufficient cause to discharge employee).
 
 
 20
 At this point, any presumption of discrimination established by the prima facie case drops out of the picture. After the employer has established a nondiscriminatory reason for its adverse employment action, the burden of proving a Title VII violation shifts back to the employee to show that the explanations offered are merely a pretext for discrimination. McDonnell-Douglas, 411 U.S. at 804-05. As the nonmoving party in a summary judgment proceeding, Stancil was required to counter with material which raised a factual dispute as to the material issue of whether Moo & Oink's stated reason for suspending and firing him was a pretext meant to cover discriminatory motives. See Celotex Corp. v. Catrett, 477 U.S. at 324 (opponent to summary judgment must affirmatively demonstrate by specific factual showing that a genuine issue of fact requires trial).
 
 
 21
 The lawsuit, therefore, centers around the question of whether Moo & Oink's stated reason for canning Stancil can be viewed as pretextual. In a summary judgment context, this means that it is Stancil's burden to produce enough evidence of pretext to raise a genuine issue of material fact. Rand v. CF Industries, Inc., 42 F.3d 1139, 1145 (7th Cir.1994). Stancil failed in his burden, and we agree with the district court that he has offered nothing other than his "own self-interested assertions concerning his abilities and work performance." We have previously stated that on summary judgment such assertions are insufficient to carry the requisite burden. See Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1460 (7th Cir.1994); McDonnell v. Cournia, 990 F.2d 963, 969 (7th Cir.1993); Williams v. Williams Electronics, Inc., 856 F.2d 920, 924 (7th Cir.1988).
 
 
 22
 In regard to the five-day suspension, the only "evidence" Stancil provided is that he did not want to take hourly breaks. He concedes that he refused to take the medically ordered breaks. There is no evidence that he told his supervisors that the hourly breaks caused him discomfort of any sort. The insubordination, then, is undisputed. (Whether or not the suspension was reasonable is not a concern in a Title VII suit; the court asks only whether the action was a pretext to hide the employer's true, discriminatory motive. Darnell v. Target Stores, 16 F.3d 174, 178-79 (7th Cir.1994).)
 
 
 23
 In regard to the termination, the only "evidence" Stancil provided was his own statement that he never threatened anyone. But the question is not whether Stancil actually made the threat; instead, we ask only whether Moo & Oink reasonably believed that the threat was made and then fired him on the basis of that belief. See Rand, 42 F.3d at 1145 ("Any pretext determination is concerned with whether the employer honestly believes in the reasons it offers, not whether it made a bad decision"). The fact is undisputed that Stancil's steward, Mr. Richardson, reported to the employer's managers that Stancil told him after the grievance hearing, "I ought to get my gun and shoot all you motherfuckers." No pretext has been shown, and the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Stancil later withdrew all claims of racial discrimination and proceeded only as to the retaliation claim