## ASTORIA FEDERAL SAVINGS & LOAN ASSOCIATION *v.* SOLIMINO

No. 89–1895.   Argued April 17, 1991—Decided June 10, 1991

*Paul J. Siegel* argued the cause for petitioner. With him on the brief were *Roger S. Kaplan* and *Anthony H. Atlas.*

*Leonard N. Flamm* argued the cause for respondent. With him on the brief was *Joseph J. Gentile.*

*Amy L. Wax* argued the cause *pro hac vice* for the United States as *amicus curiae* urging affirmance. On the brief were *Solicitor General Starr, Assistant Attorney General Gerson, Deputy Solicitor General Roberts, Robert A. Long, Jr., Donald R. Livingston, Gwendolyn Young Reams,* and *Lamont N. White.*\*

---

\*Briefs of *amici curiae* urging reversal were filed for the Atlantic Legal Foundation by *Martin S. Kaufman* and *Douglas Foster;* and for the Equal Employment Advisory Council by *Robert E. Williams* and *Douglas S. McDowell.*

Briefs of *amici curiae* urging affirmance were filed for the New York State Division of Human Rights by *Robert Abrams*, Attorney General, *O. Peter Sherwood*, Solicitor General, and *Sanford M. Cohen* and *Marjorie*

JUSTICE SOUTER delivered the opinion of the Court.

The question presented is whether claimants under the Age Discrimination in Employment Act of 1967 (Age Act or Act), 81 Stat. 602, as amended, 29 U. S. C. § 621 *et seq.*, are collaterally estopped to relitigate in federal court the judicially unreviewed findings of a state administrative agency made with respect to an age-discrimination claim. We hold that such findings have no preclusive effect on federal proceedings.

Respondent Angelo Solimino had worked for petitioner Astoria Federal Savings and Loan Association for almost 40 years when at age 63 he was dismissed from his position as a vice president in the mortgage department. Less than two weeks later, on March 18, 1982, he filed a charge of age discrimination with the Equal Employment Opportunity Commission (EEOC). Under a worksharing agreement between it and the state agency, see 29 CFR § 1626.10 (1990), the EEOC referred the matter to the New York State Division of Human Rights, which is responsible for preliminary investigation and disposition of age-discrimination cases under New York's Human Rights Law. On January 25, 1983, after a hearing at which both parties were represented by counsel, the state agency found no probable cause to believe that petitioner had terminated respondent because of his age. The ruling was affirmed on review for abuse of discretion by the State Human Rights Appeal Board on May 30, 1984. Although both the Division and the Appeal Board entertained respondent's complaint only on state-law grounds, neither party suggests that the elements of an age-discrimination claim differ as between the state and federal statutes.

Respondent did not seek review of the board's decision in state court, but instead filed an Age Act suit in the United States District Court for the Eastern District of New

*Fujiki,* Assistant Attorneys General; and for the American Association of Retired Persons by *Cathy Ventrell-Monsees.*

York grounded on the same factual allegations considered in the state administrative proceedings. The District Court granted petitioner's motion for summary judgment, 715 F. Supp. 42 (1989), and relied heavily on the decision in *Stillians* v. *Iowa,* 843 F. 2d 276 (CA8 1988), in holding the common-law presumption of administrative estoppel to prevail by virtue of Congress' failure in either the language or legislative history of the Age Act "actually [to] addres[s] the issue." 715 F. Supp., at 47. It ruled accordingly that the determination of the State's Human Rights Division that petitioner had not engaged in age discrimination precluded federal litigation of the claim. The Court of Appeals for the Second Circuit reversed, 901 F. 2d 1148 (1990), inferring from the Act's structure a legislative intent to deny preclusive effect to such state administrative proceedings. We granted certiorari, 498 U. S. 1023 (1991), to resolve the conflict between the ruling here under review, see also *Duggan* v. *Board of Education of East Chicago Heights, Dist. No. 169, Cook County, Ill.,* 818 F. 2d 1291 (CA7 1987), and those of the Eighth Circuit in *Stillians, supra,* and of the Ninth Circuit in *Mack* v. *South Bay Beer Distributors, Inc.,* 798 F. 2d 1279 (1986).

We have long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose." *United States* v. *Utah Constr. & Mining Co.,* 384 U. S. 394, 422 (1966). Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their

burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. See *Parklane Hosiery Co.* v. *Shore,* 439 U. S. 322, 326 (1979). The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, see *University of Tennessee* v. *Elliott,* 478 U. S. 788, 798 (1986), which acts in a judicial capacity.

Courts do not, of course, have free rein to impose rules of preclusion, as a matter of policy, when the interpretation of a statute is at hand. In this context, the question is not whether administrative estoppel is wise but whether it is intended by the legislature. The presumption holds nonetheless, for Congress is understood to legislate against a background of common-law adjudicatory principles. See *Briscoe* v. *LaHue,* 460 U. S. 325 (1983); *United States* v. *Turley,* 352 U. S. 407, 411 (1957). Thus, where a common-law principle is well established, as are the rules of preclusion, see, *e. g.,* *Parklane Hosiery, supra; Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation,* 402 U. S. 313 (1971); *Chicot County Drainage Dist.* v. *Baxter State Bank,* 308 U. S. 371 (1940), the courts may take it as given that Congress has legislated with an expectation that the principle will apply except "when a statutory purpose to the contrary is evident." *Isbrandtsen Co.* v. *Johnson,* 343 U. S. 779, 783 (1952).

This interpretative presumption is not, however, one that entails a requirement of clear statement, to the effect that Congress must state precisely any intention to overcome the presumption's application to a given statutory scheme. Rules of plain statement and strict construction prevail only to the protection of weighty and constant values, be they constitutional, see, *e. g., Atascadero State Hosp.* v. *Scanlon,* 473 U. S. 234, 243 (1985) (requiring plain statement of intention to abrogate immunity of States under the Eleventh Amendment), or otherwise, see, *e. g., EEOC* v. *Arabian American*

*Oil Co.*, 499 U. S. 244, 248 (1991) (requiring plain statement of extraterritorial statutory effect, "to protect against unintended clashes between our laws and those of other nations which could result in international discord"). See generally Eskridge, Public Values in Statutory Interpretation, 137 U. Pa. L. Rev. 1007 (1989). "In traditionally sensitive areas, . . . the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision." *United States* v. *Bass*, 404 U. S. 336, 349 (1971). Similar superior values, of harmonizing different statutes and constraining judicial discretion in the interpretation of the laws, prompt the kindred rule that legislative repeals by implication will not be recognized, insofar as two statutes are capable of coexistence, "absent a clearly expressed congressional intention to the contrary." *Morton* v. *Mancari*, 417 U. S. 535, 551 (1974).

But the possibility of such an implied repeal does not cast its shadow here. We do not have before us the judgment of a state court, which would by law otherwise be accorded "the same full faith and credit in every court within the United States . . . as [it has] by law or usage in the courts of such State." 28 U. S. C. § 1738. In the face of § 1738, we have found state-court judgments in the closely parallel context of Title VII of the Civil Rights Acts of 1964, 78 Stat. 253, as amended, 42 U. S. C. § 2000e *et seq.*, see *Lorillard* v. *Pons*, 434 U. S. 575, 584 (1978), to enjoy preclusive effect in the federal courts. See *Kremer* v. *Chemical Constr. Corp.*, 456 U. S. 461 (1982); see also *Allen* v. *McCurry*, 449 U. S. 90 (1980). This case, by contrast, implicates no such implied repeal, as § 1738 is inapplicable to the judicially unreviewed findings of state administrative bodies. See *Elliott, supra*, at 794. Nor does administrative preclusion represent independent values of such magnitude and constancy as to justify the protection of a clear-statement rule. Although administrative estoppel is favored as a matter of general policy, its

suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures. Cf. *Alexander* v. *Gardner-Denver Co.*, 415 U. S. 36, 57–58 (1974); *Pearson* v. *Williams*, 202 U. S. 281, 285 (1906). The presumption here is thus properly accorded sway only upon legislative default, applying where Congress has failed expressly or impliedly to evince any intention on the issue.

In *Elliott*, which also dealt with Title VII, the test for the presumption's application was thus framed as the question "whether a common-law rule of preclusion would be consistent with Congress' intent in enacting [the statute]." 478 U. S., at 796. See also *Brown* v. *Felsen*, 442 U. S. 127, 136 (1979); Restatement (Second) of Judgments § 83(4)(a) (1982). In contrast to 42 U. S. C. § 1983, in which the Court discerned " '[n]othing . . . remotely express[ing] any congressional intent to contravene the common-law rules of preclusion,' " 478 U. S., at 797 (quoting *Allen* v. *McCurry*, 449 U. S. 90, 97–98 (1980)), Title VII was found by implication to comprehend just such a purpose in its direction that the EEOC accord " 'substantial weight to final findings and orders made by State or local authorities in proceedings commenced under State or local [employment discrimination] law.' " *Elliott, supra,* at 795 (quoting 42 U. S. C. § 2000e–5(b)). What does not preclude a federal agency cannot preclude a federal court, see *Kremer, supra,* at 470, and n. 7; *Duggan,* 818 F. 2d, at 1294; we accordingly held that in the district courts the "substantial weight" standard allowed clearly for something less than preclusion. *Elliott, supra,* at 795.

We reach the same result here, for the Age Act, too, carries an implication that the federal courts should recognize no preclusion by state administrative findings with respect to age-discrimination claims. While the statute contains no express delimitation of the respect owed to state agency findings, its filing requirements make clear that collateral estop-

pel is not to apply. Section 14(b) requires that where a State has its own age-discrimination law, a federal Age Act complainant must first pursue his claim with the responsible state authorities before filing in federal court. 29 U. S. C. § 633(b); *Oscar Mayer & Co.* v. *Evans,* 441 U. S. 750 (1979). It further provides that "no suit may be brought under [the Age Act] before the expiration of sixty days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated." The deadline for filing with the EEOC likewise refers to the termination of prior state administrative action, § 7(d)(2) providing that where § 14(b) applies "[s]uch a charge shall be filed . . . within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier." 29 U. S. C. § 626(d)(2). Both provisions plainly assume the possibility of federal consideration after state agencies have finished theirs.

And yet such federal proceedings would be strictly *pro forma* if state administrative findings were given preclusive effect. It goes without saying that complainants who succeed in state proceedings will not pursue suit in federal court (except perhaps when the state remedy, or its enforcement, is thought to be inadequate); § 14(b)'s requirement that claimants file with state authorities before doing so in federal court was in fact "intended to screen from the federal courts those discrimination complaints that might be settled to the satisfaction of the grievant in state proceedings." *Oscar Mayer, supra,* at 756. A complainant who looks to a federal court after termination of state proceedings will therefore ordinarily do so only when the state agency has held against him. In such a case, however, the employer would likely enjoy an airtight defense of collateral estoppel if a state agency determination on the merits were given preclusive effect. Cf. *Kremer, supra,* at 479–480. Insofar as applying preclusion would thus reduce to insignificance those cases in

which federal consideration might be pursued in the wake of the completed proceedings of state agencies, § 14(b)'s provision for just such consideration would be left essentially without effect. But of course we construe statutes, where possible, so as to avoid rendering superfluous any parts thereof. See, *e. g.*, *United States* v. *Menasche*, 348 U. S. 528, 538–539 (1955).

That the Age Act lacks the "substantial weight" provision of Title VII's § 2000e–5(b) stressed in *Elliott* is immaterial. There was nothing talismanic about that language; it was "simply the most obvious piece of evidence that administrative *res judicata* does not operate in a Title VII suit." *Duggan, supra,* at 1297. It would indeed be ironic if that section were to make the difference between that statute and the Age Act insofar as preclusion in federal courts is concerned, for the language was added to Title VII not because the EEOC was applying administrative preclusion, or "giving state administrative decisions too much weight, but because it was affording them too little." *Kremer, supra,* at 471, n. 8. Similar provision has been unnecessary in the Age Act, for as to age-discrimination claims the EEOC of its own accord came to extend some level of deference to the determinations of state authorities. See Brief for United States et al. as *Amici Curiae* 24. It is, in any event, fair to say that even without Title VII's "substantial weight" requirement the Court would have found no administrative preclusion in that context. Title VII's § 706(c), 42 U. S. C. § 2000e–5(c), which also provides for federal court action in the aftermath of terminated state proceedings and is nearly identical to the Age Act's § 14(b), see *Oscar Mayer, supra,* at 755, would have provided yet further support for the Court's result there.

Thus § 14(b) suffices to outweigh the lenient presumption in favor of administrative estoppel, a holding that also comports with the broader scheme of the Age Act and the provisions for its enforcement. Administrative findings

with respect to the age-discrimination claims of federal employees enjoy no preclusive effect in subsequent judicial litigation, see *Rosenfeld* v. *Department of Army*, 769 F. 2d 237 (CA4 1985); *Nabors* v. *United States*, 568 F. 2d 657 (CA9 1978); cf. *Chandler* v. *Roudebush*, 425 U. S. 840 (1976) (same, with respect to Title VII claims), and since there is no reason to believe federal enforcement agencies are any less competent than their state counterparts, it would be anomalous to afford more deference to one than the other. It would, indeed, invite further capricious anomalies as well, for whether age-discrimination claims are investigated first by the EEOC or by state authorities is a matter over which the complainant has no control, see 29 CFR §§ 1626.9, 1626.10 (1990); whether or not he might receive his day in court (complete with jury, see 29 U. S. C. § 626(c)(2)), would then depend, under petitioner's theory, on bureaucratic chance. Petitioner's reading would also lead to disparities from State to State, depending on whether a given jurisdiction had an age-discrimination statute of its own. See § 633(b). Moreover, on the assumption that claimants fare better in federal court than before state agencies, and in light of § 14(a)'s provision that state proceedings are superseded upon commencement of federal action, see § 633(a), a recognition of administrative estoppel here would induce all claimants to initiate federal suit at the earliest opportunity after filing the state complaint, thereby defeating the purpose of deferral to resolve complaints outside the federal system. See *Oscar Mayer, supra,* at 755–756.

Finally, although the wisdom of Congress' decision against according preclusive effect to state agency rulings has no bearing upon the disposition of the case, that choice has plausible policy support. Although it is true that there will be some duplication of effort, the duplication need not be great. We speak, after all, only of agency determinations not otherwise subjected to judicial review; our reading of the statute will provide no more than a second chance to prove the claim,

and even then state administrative findings may be entered into evidence at trial. See *Chandler, supra,* at 863, n. 39. It also may well be that Congress thought state agency consideration generally inadequate to ensure full protection against age discrimination in employment. In this very case, the New York Division of Human Rights, which ruled against respondent on the merits, has itself appeared as *amicus* on his behalf, highlighting the shortfalls of its procedures and resources. See Brief for New York State Division of Human Rights as *Amicus Curiae* 18–22. Alternatively, by denying preclusive effect to any such agency determination, Congress has eliminated litigation that would otherwise result, from State to State and case to case, over whether the agency has in fact "act[ed] in a judicial capacity" and afforded the parties "an adequate opportunity to litigate," *Utah Constr. Co.,* 384 U. S., at 422, so as to justify application of a normal rule in favor of estoppel.

For these reasons, the District Court's grant of petitioner's motion for summary judgment was erroneous on the grounds stated. The judgment of the Court of Appeals is affirmed, and the case is remanded to the District Court for proceedings consistent with this opinion.

*It is so ordered.*