89 F.3d 835
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William STALLINGS, Plaintiff-Appellant,
v.
The GOSHEN DAIRY STORES, INC., Defendant-Appellee.
 No. 95-3228.
 United States Court of Appeals, Sixth Circuit.
 June 27, 1996.
 
 Before: KEITH, NELSON, and SILER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff, William Stallings, appeals the grant of summary judgment in favor of defendant, The Goshen Dairy Stores, Inc. ("Goshen Dairy"). The district court held that Stallings' lawsuit was barred by res judicata because a state court had already resolved the issue. For the reasons stated hereafter, we affirm.
 
 I.
 
 2
 Stallings alleges that he was wrongfully discharged from his employment with Goshen Dairy because of his age. On January 29, 1993, Stallings filed a "charge affidavit" with the Ohio Civil Rights Commission ("OCRC"), which determined that no probable cause existed to believe that Goshen Dairy had unlawfully discriminated against Stallings. Stallings' application for reconsideration before the OCRC was denied. On January 7, 1994, Stallings petitioned the Tuscarawas County Court of Common Pleas ("the Tuscarawas court") for judicial review of the OCRC's finding. Subsequently, Stallings filed a complaint on May 25, 1994 against Goshen Dairy in federal district court, alleging that Goshen Dairy had violated the Age Discrimination in Employment Act ("ADEA").[1] On September 12, 1994, the Tuscarawas court concluded that the OCRC's decision not to issue a complaint because of lack of probable cause was not irrational or capricious. On January 31, 1995, the federal district court granted Goshen Dairy's motion for summary judgment.
 
 
 3
 Stallings contends that the action taken by the OCRC and the Tuscarawas court does not preclude his suit in federal court pursuant to the ADEA. Goshen Dairy counters that Stallings is precluded from relitigating the same claim in federal court because he unsuccessfully filed a discrimination charge with a state's administrative agency and subsequently appealed this adverse decision to state court.
 
 II.
 
 4
 Stallings brought this claim pursuant to the ADEA. Because Ohio has established the OCRC to investigate illegal discrimination, Stallings was required to commence state proceedings and wait sixty days prior to filing his ADEA action. 29 U.S.C. § 633(b); see Whitfield v. City of Knoxville, 756 F.2d 455, 460 (6th Cir.1985). His claim having been rejected by the OCRC, Stallings opted to petition the state court for review of the OCRC decision. The issue at hand is what effect the state proceedings may have had on Stallings' subsequent federal claim.
 
 
 5
 Federal courts must afford the same full faith and credit to state court judgments that would apply in the state's own courts. 28 U.S.C. § 1738; see also Whitfield, 756 F.2d at 459 ("Nothing in the ADEA evinces a Congressional intent that the rule set forth in § 1738 should not apply in age discrimination cases."). Thus, federal courts are required to "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982). Therefore, this court must initially inquire whether, under prevailing Ohio law, res judicata precludes Stallings' ADEA action.
 
 
 6
 Ohio recently adopted the "modern application of the doctrine of res judicata." Shelar v. Shelar, 901 F.Supp. 1307, 1311 (N.D.Ohio 1995). In Ohio, a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. See Grava v. Parkman Township, 653 N.E.2d 226, 227 (Ohio 1995) (syllabus) (overruling Norwood v. McDonald, 52 N.E.2d 67 (Ohio 1943)). Whether claims "arise out of the same transaction" depends on their logical relation--when " '[the claims] involve many of the same factual issues, or ... whe[n] they are offshoots of the same basic controversy between the parties.' " Shelar, 910 F.Supp. at 1311 n. 2 (quoting Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir.1961)).
 
 
 7
 This court must examine whether the instant action is "logically related" to Stallings' action in state court. The Tuscarawas court affirmed the OCRC determination that "evidence does not substantiate that [Stallings] was discharged because of his age" and that "it is NOT PROBABLE that [Goshen Dairy] has engaged in practices unlawful under Section 4112, Ohio Revised Code."[2] The necessary inference raised by this decision was that Stallings' claim under Ohio law was without merit.
 
 
 8
 This court has determined "that the elements and burden of proof in a[n Ohio] age discrimination claim are the same as [that] in a federal case." McLaurin v. Fischer, 768 F.2d 98, 105 (6th Cir.1985) (citing Barker v. Scovill, Inc., 451 N.E.2d 807, 808 (Ohio 1983)); see also Borowski v. State Chem. Mfg. Co., 647 N.E.2d 230, 234 (Ohio Ct.App.1994) ("The evidence necessary to sustain a federal and a state discrimination claim is identical."). Therefore, as the district court concluded: "Because the facts necessary to sustain age discrimination claims under Ohio law and under the ADEA are identical, this court is satisfied that the federal and state claims asserted in the instant cause are part and parcel of the cause of action previously before the state court."
 
 III.
 
 9
 Stallings employs equitable terminology to show that peculiarities in this case should preclude the harsh effects of res judicata. Stallings hints that because the first proceeding--the Tuscarawas court proceeding--was a "review for arbitrariness" rather than a "trial-like hearing," issue preclusion should not apply. This argument, however, was explicitly rejected in Kremer, 456 U.S. at 480 n. 21. The procedural facts in Kremer are remarkably similar to those in the instant case. That the Tuscarawas court merely upheld a state administrative agency's rejection of an employment discrimination claim does not preclude application of res judicata. See id. at 479-80; Swapshire v. Baer, 865 F.2d 948, 950 (8th Cir.1989) (disagreeing that "because the state court's standard of review of administrative action is limited under Missouri law, the state court's judgment is not entitled to preclusive effect" and finding instead that "[t]here is no requirement that judicial review must proceed de novo in order for the state-court judgment to be entitled to preclusive effect in federal court under § 1738").[3]
 
 
 10
 The fact that the administrative determination was reviewed by a state court in this case is critical. See Astoria Fed'l Savings & Loan Ass'n v. Solimino, 501 U.S. 104, 106 (1991) (holding that unreviewed administrative determinations made with respect to an ADEA claim are not entitled to preclusive effect in federal proceedings). Solimino dealt with the preclusive effect of administrative findings absent a "judgment of a state court." Id. at 109. There is no evidence that Solimino abrogated the Kremer holding; the Court itself conceded that the reach of Solimino would be limited to "agency determinations not otherwise subjected to judicial review." Id. at 113.
 
 
 11
 While Kremer remains the general rule for administrative agency decisions reviewed by state courts, the inquiry is not yet finished. Stallings' more serious argument echoes that of the claimant in Kremer: the Ohio "administrative and judicial proceedings in this case were so deficient that they are not entitled to preclusive effect in federal courts." Kremer, 456 U.S. at 467. Kremer offered a narrow exception to the general rule by proclaiming that issue preclusion "does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." Id. at 480-81 (citations omitted). The exception is limited; state proceedings "need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit established by federal law." Id. at 481. Thus, this court must determine whether the Ohio procedures satisfy the Due Process threshold such that the state court proceeding merits preclusion.
 
 
 12
 In Kremer, the Supreme Court had little doubt that the procedures provided to discrimination plaintiffs in New York adequately met the Due Process threshold. See id. at 484 ("We have no hesitation in concluding that this panoply of procedures, complemented by administrative as well as judicial review, is sufficient under the Due Process Clause."). Stallings alleges that the procedures offered to him were less exacting than those established in New York. The OCRC has significant powers: it could hold hearings, subpoena witnesses, administer oaths, take the testimony of any person under oath, and require the production of documents. OHIO REV.CODE ANN. § 4112.04. In conducting an investigation, the commission has the power to access records, documents, individuals, and other possible sources of evidence and take and record the testimony of the individuals as reasonably necessary for the furtherance of the investigation. Id.[4] Following a determination of no probable cause, a claimant may apply to the OCRC for reconsideration. OHIO ADMIN.CODE § 4112-3-04(A). The OCRC is required to set forth "findings of fact" that support its determination that no probable cause exists. OHIO REV.CODE ANN. § 4112.05(H). These findings of fact are reviewed by the trial court, id. § 4112.06, for a determination whether there was "sufficient justification for [the OCRC's] decision not to issue a complaint." McCrea v. Ohio Civil Rights Comm'n, 486 N.E.2d 143, 146 (Ohio Ct.App.1984). These opportunities for administrative and judicial review meet the threshold due process requirements.
 
 
 13
 This court recognizes the informality inherent in claims that are rejected at the preliminary investigation level. See McCrea, 486 N.E.2d at 146 (outlining the informal process of preliminary investigations). At this stage in the process, the OCRC "has not established adjudicatory procedures entitling [Stallings] to be heard at an adversary-oriented, evidentiary hearing on his charge of [age] discrimination against [Goshen Dairy]." Salazar v. Ohio Civil Rights Comm'n, 528 N.E.2d 1303, 1308 (Ohio Ct.App.1987). Even so, Stallings could submit evidence to the OCRC, the OCRC conducted an investigation that included gathering evidence and interviewing witnesses, Stallings was able to rebut the decision of the OCRC by applying for reconsideration, and he was able to file a Petition, Initial Brief, and Reply Brief in the Tuscarawas court. Stallings had ample opportunity to demonstrate any error in the OCRC's findings. The OCRC procedures that guide a no probable cause finding, while failing to guarantee the trial-like hearing that Stallings desires, offer sufficient due process to warrant the preclusive effect of section 1738.
 
 
 14
 Stallings was required to file this claim before the OCRC. Stallings chose, however, to petition the Tuscarawas court to review the OCRC determination.[5] This choice, for whatever reason it was made, produced a state court proceeding. The Ohio doctrine of res judicata would prevent Stallings from relitigating this matter in Ohio state courts. Section 1738 prevents Stallings from bringing in federal court what he could not bring in Ohio courts. The "panoply of administrative and judicial procedures" offered to Stallings satisfy Due Process requirements, and the district court rightfully determined that the case could not be heard.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 In March 1994, the United States Equal Employment Opportunity Commission had issued a determination that insufficient evidence was obtained during OCRC's investigation to establish a violation of the ADEA, thereby permitting the filing in federal district court
 
 
 [2]
 Specifically, the Tuscarawas court found that Stallings "failed to establish that the [OCRC's] determination (no probable cause for charge of age discrimination) was irrational, unlawful, arbitrary or capricious." In support, the court found that the OCRC "conducted an investigation pursuant to law and that the Findings contained in the [OCRC's] decision, upon review, are extensive [and] well-reasoned."
 
 
 [3]
 Stallings also contends that the matter before the Tuscarawas court "was a continuation of the administrative proceeding commenced before the OCRC" and therefore he never had a "judicial proceeding" in state court. This argument was asserted unsuccessfully by the dissents in Kremer and is not the prevailing law. See Kremer, 456 U.S. at 489-91 (Blackmun, J., dissenting); id. at 511 (Stevens, J., dissenting)
 
 
 [4]
 The OCRC has broad discretion in the initial stages of the investigation. See OHIO ADMIN.CODE § 4112-3-03(A). "No authority has ever set forth an exact procedure OCRC must follow when conducting such a[ preliminary] investigation. OCRC, in fact, has discretion to determine the manner in which it will act." Coleman v. Warner, 611 N.E.2d 878, 881 (Ohio Ct.App.1992) (McDonald, J., concurring); see also Salazar v. Ohio Civil Rights Comm'n, 528 N.E.2d 1303, 1307 (Ohio Ct.App.1987)
 
 
 [5]
 This choice distinguishes the instant case from Solimino. Solimino went directly to federal court after his claim was rejected by state agencies. See Solimino, 501 U.S. at 106 ("Respondent did not seek review of the board's decision in state court, but instead filed an [ADEA] suit in [federal court].")