**Floyd G. JORDAN, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 02–3300.

United States Court of Appeals, Federal Circuit.

May 21, 2003.

Before NEWMAN, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

DECISION

FRIEDMAN, Senior Circuit Judge.

The decision of the Merit Systems Protection Board ("Board"), denying a petition

to nullify or rescind an agreement to settle a case before the Board, is affirmed.

## OPINION

### I

This is the fourth – and, hopefully, the last – attempt by a former United States Postal Service employee to modify or set aside a 1994 settlement agreement with the Postal Service that terminated a Board proceeding in which he challenged his removal. In this appeal he contends that the Postal Service fraudulently induced him to enter into the agreement by misrepresenting the benefits he would receive under it.

The case began when the Postal Service removed the petitioner Floyd G. Jordan from his supervisory position effective September 16, 1994, for using leave without pay in order to try out or accept other employment. Jordan challenged his removal before the Board. At a pre-hearing conference on the day of the scheduled hearing, the parties settled the case. In a handwritten agreement that the Postal Service representative, Cindy M. Wheeler, had drafted, the parties agreed that Jordan "resigns" from the Postal Service effective September 16, 1994 (the date of his removal), that he

> will be entitled to all benefits accrued up to the date of his resignation

and that "[t]he Removal Notice will be removed from his Official Personnel Folder and a new Form 50 will be processed indicating resignation. If acceptable with postal policy, the resignation will indicate 'for personal reasons.' The above indicates complete settlement of above referenced case." A new Form 50 so indicating was prepared.

Jordan had a lawyer during this proceeding, who signed the settlement agreement (together with Jordan) as Jordan's "representative."

The Board's administrative judge found that the settlement agreement was lawful, had been entered into voluntarily "and with understanding of its terms." He entered the settlement agreement into the record, and dismissed the appeal. *Jordan v. U.S. Postal Serv.*, 82 F.3d 433 (Fed.Cir. 1996) (unpublished table decision).

Less than a month later, in January 1995, Jordan "filed a 'petition to vacate settlement agreement and set cause for hearing,'" which the Board treated as a petition for review of the administrative judge's decision, and denied. Jordan challenged in this court the Board's denial of his petition to review, contending that the settlement resulted from mutual mistake. We affirmed the Board's action. *Id.*

In February, 1997, after he had returned to the Postal Service a check for more than $8,000 covering his accrued annual and holiday leave but not sick leave, Jordan tried again. This time, he filed with the Board a petition to enforce the settlement agreement. He stated that before he signed the agreement, the Postal Service had told him that he would be entitled to the same early retirement that it had offered in 1992 to employees with twenty-five years of service. Attached to his petition were three virtually identical affidavits by Jordan, his sister and his brother, each of which stated that the affiant had been present at the December 1994 pre-hearing conference and that "during the settlement negotiations" Cindy Wheeler "stated that as part of the agreement signed and attached to this petition as exhibit A, Floyd Jordan would be entitled to 'early retirement' as part of the 'all benefits accrued' portion of the settlement agreement," and that "I was present and heard the aforementioned representations by Cindy Wheeler."

The administrative judge denied enforcement. In a May, 1997 initial decision, which became final when the Board denied review, *Jordan v. U.S. Postal Serv.*, 79 M.S.P.R. 257 (1998) (unpublished table decision), he stated that "in response to" Jordan's petition, the Postal Service "denies that its representative told [Jordan] that he was entitled to an 'early retirement' package." *Jordan v. U.S. Postal Serv.*, No. CH–0752–95–019–C–1, *2 (M.S.P.B. May 12, 1997). He ruled:

I find no ambiguity in the provision of the agreement that affirms the appellant's entitlement to all "accrued benefits," the payment of which he may not receive until he meets applicable statutory age or disbursement-eligibility requirements. The agency's documentary evidence and certification that it has now satisfied all of the appellant's claims for disbursement of payable accrued benefits are unrebutted by any probative evidence or citation to relevant statutory authority.

Based on the foregoing, I find that the appellant has failed to establish that the agency is not in compliance with any aspect the parties' December 19, 1994 agreement. I find, indeed, that the agency's certification and supporting evidence show that it is currently in compliance with the expressed terms of the agreement, and that the instant enforcement petition must be DENIED.

*Id.* at *4.

Jordan filed with this court a petition to review that decision. We dismissed the petition, however, for failure to pay the docketing fee. *Jordan v. U.S. Postal Serv.*, 152 F.3d 948 (Fed.Cir.1998) (unpublished table decision).

In July 2000 Jordan wrote the Postal Service, again claiming the early retirement benefits. The Postal Service replied that Jordan was not eligible for those benefits because he lacked the requisite years of service and had not reached the minimum age. He challenged that ruling before the Board, which dismissed his petition for lack of jurisdiction. This court affirmed. *Jordan v. U.S. Postal Serv.*, 42 Fed Appx. 459 (Fed.Cir.2002) (unpublished decision).

In September, 2001, Jordan filed yet another case with the Board, after the Postal Service again told him he was not eligible for early retirement benefits. He asked that the settlement agreement be declared to be null and void because the Postal Service had not complied with it and stated that he no longer sought enforcement. He alleged that the Postal Service "has informed my elective representative that sick leave is an accrued benefit (attachment)." The latter statement refers to two identical letters, attached to his petition, that the Postal Service wrote in 1998 to a United States Senator and a Representative in response to their letters to the Postal Service posing four questions that Jordan "asked the Postal Service to address." Two of those questions and the Postal Services answers were:

Q1: Is sick leave an accrued benefit?

A1: If the definition of accrued is that the benefits increase by regular growth, then, yes it is. If not used, an employee's sick leave accumulates during the period of his employment.

Q2: If yes, where are Mr. Jordan's sick leave hours?

A2: Mr. Jordan resigned from the Service in 1994. He would not accumulate additional sick leave after that time nor could his sick leave be converted to a form of compensation.

In his initial decision, the administrative judge (the same individual who handled Jordan's three previous cases) ruled that the Postal Service was "in substantial com-

pliance with the terms of the parties' settlement agreement," and dismissed the petition to nullify the settlement agreement. *Jordan v. U.S. Postal Serv.*, No. CH–0752–95–019–C–2, *2, 4 (M.S.P.B. Nov. 29, 2001). He held that the Board's 1997 decision "found the agency was in compliance with the expressed provisions of the parties' settlement agreement," including the provisions "relating to the appellant's entitlement to accrued benefits such as sick leave, the payment of which requires the appellant to meet statutory and regulatory requirements applicable to all Postal Service employees.... Nothing in the parties' agreement provided the appellant the right to 'early retirement,' or immediate compensation for benefits for which he did not otherwise meet legal requirements for payment." *Id.* at *3. He further stated:

> In his current petition, the appellant generally claims that other employees who have resigned from employment with the agency have been paid for their accrued sick leave balances. He identifies, however, no specific employees who have been compensated for sick leave benefits who were not eligible for such compensation due to absence from work for illness or injuries prior to their resignation. It has previously been determined the appellant was not entitled to immediate retirement under the parties' agreement, and he raises no specific claim in his current petition that he was entitled to payment for sick leave for periods of alleged illness or injury prior to his resignation....

> The appellant further generally argues that because the agency cannot legally "compensate" him for his accrued sick leave benefits, the parties' agreement should be nullified.... No provision of the agreement, however, specifically provides the appellant will be compensated for the value of his accrued sick leave benefits if he is not

otherwise legally entitled to payment of those benefits.

*Id.* at *3–4.

Jordan sought Board review of the administrative judge's initial decision. The Board denied review, ruling that "there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome"—the standard the Board applies in deciding whether to grant review of decisions of administrative judges. *Jordan v. U.S. Postal Serv.*, No. CH–0752–95–019–C–2, 2002 WL 960246 (M.S.P.B. Apr. 30, 2002).

## II

■ "Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." *Stearn v. Dep't of the Navy*, 280 F.3d 1376, 1380 (Fed.Cir.2002) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)). Such a prior decision by an administrative tribunal is no less effective as res judicata than one by a judicial tribunal. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991); *Cook v. Principi*, 318 F.3d 1334 (Fed.Cir. 2002). A non-precedential decision (the Board so treats unreviewed initial decisions of its administrative judges, *Nelson v. F.D.I.C.*, 83 F.3d 1375, 1377 (Fed.Cir. 1996)) may be treated as res judicata in the subsequent judicial proceedings. *See* FED. CIR. R. 47.6(B) (2001) (prohibition on citing non-precedential opinions does not preclude their citation for "claim preclusion" (res judicata)). Under these principles, the Board's 1997 decision is res judicata with respect to all the substantive issues Jordan raises in this case.

A. The issue in the 1997 proceedings was Jordan's claim that under the settlement agreement he was entitled to and was promised the "early retirement" package. The Board rejected that claim. It found "no ambiguity in the provision of the agreement that affirms the appellant's entitlement to all 'accrued benefits,' the payment of which he may not receive until he meets applicable statutory age or disbursement-eligibility requirements. The agency's documentary evidence and certification that it has now satisfied all of the appellant's claims for disbursement of payable accrued benefits are unrebutted by any probative evidence or citation to relevant statutory authority." *Jordan,* No. CH–0752–95–019–C–1, *4, 2002 WL 960246. As the Board stated in the present case, it had determined in its 1997 decision that the Postal Service "was in compliance with the expressed provisions of the parties' settlement agreement," including the claim to "early retirement." *Jordan,* No. CH–0752–95–019–C–2, *3, 2002 WL 960246. The Board also pointed out in the present case: "It has previously been determined the appellant was not entitled to immediate retirement under the parties' agreement." *Id.*

The Board's 1997 decision did not explicitly address Jordan's contention that under the settlement agreement he was also entitled to be paid for his accrued sick leave. He could, and should, however, have raised and litigated that issue there. His sick leave and "retirement package" claims both turned on the same legal issue – whether they constituted "accrued benefits" that he was entitled to receive under the settlement agreement. Both of these claims stem from the same operative facts. Indeed, in the present case the Board viewed its 1997 decision as having covered the sick leave claim. It stated that the provisions of the settlement agreement that it there held the Postal Service had

complied with "include those relating to . . . sick leave. . . ." *Id.*

The fact that in 1997 Jordan sought enforcement of the settlement agreement but here seeks its invalidation, is no reason to deny res judicata effect to the earlier decision. The present case presents no issue regarding the scope of the relief to which Jordan would be entitled were he to prevail on the merits. The only dispute here is on the merits of his claim that he is entitled to and was promised early retirement benefits and payment for accrued sick leave. The inquiry in the application of res judicata necessarily relates to the issues in dispute in the second case and the preclusive effect on them of the decision in the first case.

Res judicata is designed to prevent repetitive and unnecessary, and therefore vexatious, litigation. *Stearn,* 280 F.3d at 1380 (citation omitted). The present case, in which for the fourth time Jordan seeks to expand his benefits under the settlement agreement, is a classic example of the situation the doctrine was intended to cover.

■ B. But even if the 1997 decision were denied res judicata effect on Jordan's accrued sick leave claim, he would not prevail on it. Unlike his claim for early retirement benefits, for which he relies on the three affidavits stating that he was promised such benefits, Jordan cites no evidence that allegedly supports his claim that he was promised payment for accrued sick leave. Instead, his argument appears to rest upon the language in the settlement agreement that he would receive "all" accrued benefits and his claim that the agency has admitted that accrued sick leave constitutes "accrued benefits" (which we reject below). The issue, however, is what "accrued benefits" covers.

It is well established that a retiring employee may use accrued sick leave in calculating his years of service for annuity purposes, but that he is not entitled to receive the cash value of such leave. 5 C.F.R. § 831.302 (2000); *Carman v. U.S.*, 221 Ct. Cl. 165, 602 F.2d 946, 948 (1979). In contrast he is entitled to receive the cash value of accrued annual leave. 5 C.F.R. § 550.1203 (2000). The Postal Service's Employee and Labor Relations Manual so provides. It states that "[n]o payment is made for accumulated sick leave when an employee retires or separates," but that such leave may be used "in calculating retirement or survivor annuity at the time of the employee's retirement or death ... [e]ach 8 hours of sick leave represents 1 day of retirement credit." U.S. Postal Serv., *Employee & Labor Relations Manual*, §§ 518.81, 513.821 (1989). Under this standard, which constitutes a regulation of the Postal Service to the extent it states agency policy, 39 C.F.R. § 211.2(a)(2) (2000), Jordan is not entitled to be paid for his accrued sick leave. *See also Stewart v. U.S. Postal Serv.*, 926 F.2d 1146, 1149 (Fed.Cir.1991).

Jordan contends, however, that after the 1997 decision the Postal Service stated that unused accrued sick leave was "in fact 'accrued benefits.'" He relies upon the Postal Service's 1998 letters to the Senator and Representative quoted above.

The argument distorts what the Postal Service there stated. The Postal Service did not say that accrued sick leave generally was an accrued benefit, but only that it was such a benefit in the sense "that the benefits increase by regular growth." It further stated that after Jordan retired in 1994, "[h]e would not accumulate additional sick leave after that time nor could sick leave be converted to a form of compensation."

C. Our conclusion that Jordan cannot recover on his substantive claims makes it unnecessary to consider his alternative contention that the Board's refusal to review the administrative judge's initial decision is not supported by substantial evidence.