J-A15041-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOSEPH RIAD AND RIAD HOLDINGS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WELLS FARGO BANK N.A. AND TINA | : | No. 2052 EDA 2020 |
| J. MAGANA | : | |

Appeal from the Order Entered September 30, 2020
In the Court of Common Pleas of Chester County Civil Division at No(s):
No. 2016-08610-MJ

BEFORE:  BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    Filed: November 4, 2021

Joseph Riad ("Riad") and Riad Holdings (collectively, "Appellants") appeal from the Order granting the Motion for Summary Judgment filed by Tina Lopez Magana ("Magana") and Wells Fargo Bank, N.A. ("Wells Fargo"). We affirm.

The instant action stems from three separate sets of claims involving Appellants, Wells Fargo, and Magana.  First, between November 23, 2010, and January 18, 2011, six separate wire transfers were executed from Wells Fargo accounts owned by Riad and/or Riad Holdings, ranging from $100.00 to $670,000.00, to various bank accounts located in the country of Burkina Faso

(the "Wire Transfer Claims").[1] In January 2011, Riad went to a Wells Fargo branch several times, claimed that the wire transfers were unauthorized, and requested the return of the funds.

Regarding the second set of claims, between December 2, 2011, and February 24, 2012, Riad purchased four separate cashier's checks, each issued to different businesses, in amounts ranging from $1,100,010.00 to $1,200,000.00 (the "Cashier's Check Claims"). Riad asserted that he had then deposited each of the checks into Riad's Wells Fargo account, but that Wells Fargo had failed to properly deposit the money into that account.

The final set of claims stem from a September 2010 real estate transaction between Riad, Robert Watkins ("Robert"), and Scott Watkins ("Scott") (collectively, the "Watkins Brothers"), regarding a parcel of property in Chester County (the "Property"), where the Watkins Brothers resided as caretakers for multiple disabled family members (the "Notarization Claims"). This Court previously set forth the factual history underlying this transaction, which we adopt for the purposes of this appeal and will not restate herein. **See Watkins v. Riad**, 226 A.3d 665 (Pa. Super. 2020) (unpublished memorandum at *1-4), **appeal denied**, 237 A.3d 391 (Pa. 2020). The

---

[1] One of the Burkina Faso accounts was apparently owned by Riad. Two of the six wire transfers were sent from Riad's Wells Fargo account to Riad's account in Burkina Faso.

Notarization Claims involved a dispute over the notarization of the Watkins Brothers' signatures on the Deed transferring the Property from them to Riad.

In the instant action, on September 12, 2016, Appellants filed a Writ of Summons related to the Wire Transfer Claims, the Cashier's Check Claims, and the Notarization Claims. Appellants filed their Complaint on September 12, 2017. In the Complaint, Appellants averred several claims against Wells Fargo related to negligence, negligent hiring and supervision of employees, breach of contract, unjust enrichment, and conversion. Appellants also asserted negligence claims against Magana related to Magana's notarization of the Deed transferring the Property from the Watkins Brothers to Riad. On June 5, 2018, Defendants filed an Answer and New Matter. On June 26, 2019, Appellants filed an Answer to the New Matter, and the pleadings were closed.

On September 18, 2019, Appellants filed a separate action in the United States District Court for the Eastern District of Pennsylvania (the "District Court") against Wells Fargo (the "Federal Suit"). The claims Appellants raised in the Federal Suit were also related to the Cashier's Check Claims and the Wire Transfer Claims. Wells Fargo subsequently moved for summary judgment in both the Federal Suit and the instant action. Regarding the instant action, Wells Fargo and Magana filed a joint Motion for summary judgment on February 25, 2020, and a supporting memorandum, to which Appellants filed a Response and supporting memorandum. The parties each filed several supplemental filings not relevant to the instant appeal.

On August 6, 2020, the District Court, applying Pennsylvania law, granted in part Wells Fargo's Motion for summary judgment. Specifically, the District Court concluded that Appellants' claims were barred by the applicable statute of limitations. *See Riad v. Wells Fargo Bank, N.A.*, 2020 WL 4530698 (E.D. Pa. 2020) (unpublished memorandum).[2] Subsequently, on September 30, 2020, the trial court adopted the District Court's conclusions, and entered summary judgment in favor of Wells Fargo on the Cashier's Check Claims and the Wire Transfer Claims, and entered summary judgment in favor of Wells Fargo and Magana on the Notarization Claims. Appellants filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Appellants raise the following questions for our review:

1. Whether the [trial c]ourt err[ed] when it held [that] Wells Fargo was entitled to invoke the affirmative defense of collateral estoppel when [Wells Fargo had] waived the defense and Appellants suffered prejudice?

2. Whether the [trial c]ourt err[ed] when it found collateral estoppel barred Appellants' claims because an entry of partial summary judgment is not entitled to preclusive effect in other litigation?

3. Whether the [trial c]ourt err[ed] when it dismissed the action, in lieu of issuing a stay, where the state action was filed first?

---

[2] The District Court denied Wells Fargo's Motion for summary judgment with respect to Appellants' claims that Wells Fargo improperly and without authorization had opened or conducted activity on various bank accounts under Riad's name. Those claims were not raised before the trial court in the instant case.

4. Whether the [trial c]ourt erred when it calculated the accrual dates for Appellants' breach of contract claims based on the date of injury and not based on the date of breach?

5. Whether the [trial c]ourt err[ed] when, on a [M]otion for summary judgment, it h[eld] that the injury (or breach) occurred on [] December [23,] 2011[,] and when it h[eld] Riad had knowledge of same on [] December [23,] 2011[,] despite substantial evidence and expert testimony to the contrary?

6. Whether the [trial c]ourt err[ed] when, on a [M]otion for summary judgment, it [found] that Appellants['] claims accrued on [] January [28,] 2011[,] and [] December [23,] 2011[,] and were not tolled under either the discovery rule or the doctrine of fraudulent concealment?

7. Whether the [trial c]ourt err[ed] when in [found] that the bank and notary are not liable where the conduct is negligence *per se*?

Brief for Appellants at 6-7 (issues renumbered).

We will address Appellants' first three issues together, as they are related. First, Appellants argue that the trial court erred when it determined that the Wire Transfer Claims and Cashier's Check Claims were barred by collateral estoppel. *Id.* at 62-71. Appellants assert that Wells Fargo was barred from raising the defense of collateral estoppel, because it had failed to raise the defense as new matter in a responsive pleading. *Id.* at 62-65. Appellants posit that they were prejudiced by Wells Fargo's failure to assert collateral estoppel earlier in the proceedings. *Id.* at 65.

Second, Appellants aver that Wells Fargo cannot assert collateral estoppel, because the District Court's granting of partial summary judgment in the Federal Suit deprived Appellants of the ability to fully litigate its disputed factual issues. *Id.* at 66-70.

- 5 -

Third, Appellants assert that the trial court should have entered a stay of the civil action pending an appeal of the Federal Suit. *Id.* at 71. Appellants argue that because the state court action was filed first, that action should have been stayed, as its dismissal improperly impacted the statute of limitations. *Id.* As a result, Appellants contend that they were deprived of a full and fair opportunity to litigate their claims. *Id.*

Each of Appellants' first three claims challenge the trial court's conclusion that principles of collateral estoppel preclude Appellants from litigating the Wire Transfer Claims and Cashier's Check Claims. Pennsylvania law provides that

> summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontroverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment…. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on facts and circumstances before the trial court after hearing and consideration.

*Cresswell v. Pa. Nat'l Mut. Cas. Ins. Co.*, 820 A.2d 172, 177 (Pa. Super. 2003) (quotation and emphasis omitted).

Here, the trial court concluded as a matter of law that Appellants' claims are barred by the doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, is a doctrine which prevents re-litigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995). Collateral estoppel applies if the following elements are present: (1) the issue is identical to an issue decided in a prior case; (2) the prior case resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to the prior case, or is in privity with a party to that case; (4) there was a full and fair opportunity to litigate the issue in the prior case; and (5) the determination in the prior case was essential to the judgment. *E.K. v. J.R.A.*, 237 A.3d 509, 521 (Pa. Super. 2020); *Wilmington Trust, N.A. v. Unknown Heirs*, 219 A.3d 1173, 1179 (Pa. Super. 2019). Whether collateral estoppel bars re-litigation of an issue is a question of law subject to this Court's plenary, *de novo* review. *Wilmington Trust, N.A.*, 219 A.3d at 1179. Furthermore, "[t]he judgments of the federal courts are owed their due force and full effect in state courts." *In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012).

In its Opinion accompanying the grant of summary judgment, the trial court stated the following:

The [C]ashier's [C]heck[] [C]laims and [W]ire [T]ransfer [C]laims decided in the [F]ederal [Suit] are identical to those made here. Judge Kenney opined, "[Appellants] and [Wells Fargo] are also currently litigating the unauthorized wire transfer and improperly handled cashier's check and deposit claims in the Chester County Court of Common Pleas…." [**Riad**, 2020 WL 4530698 at *3.]

A judgment entered on a motion for summary judgment is on the merits. **Basile v. H&R Block, Inc.**, … 973 A.2d 417, 422 ([Pa. ]2009) (where summary judgment is reversed on appeal, no decision on the merits has been made).

Collateral estoppel is asserted against Riad, Riad Trust[3] and Riad Holdings. [Appellants] aver in their [C]omplaint that Riad Trust & Riad Holdings is a Delaware Corporation owned solely by Riad. []Complaint, [9/12/17,] ¶ 6[.] Plaintiffs in the [F]ederal [Suit] are Riad and Riad Holdings, Inc.

[Appellants] brought the second action in federal court. Judge Kenney wrote at considerable length describing his analysis of the record submitted on summary judgement [*sic*] and his application of Pennsylvania law to the facts at hand. When considering each cashier's check and wire transfer, Judge Kenney carefully assessed the date the statute of limitations accrued and then considered the record offered by Riad in support of tolling the statutes of limitations. [Appellants] have had a full and fair opportunity to litigate the matter in the forum of their choosing.

Trial Court Opinion, 9/30/20, at 5-6 (footnote added).

With regard to Appellants' contention that Wells Fargo had waived its claim of collateral estoppel, by not raising the issue in its New Matter, Wells Fargo countered that Appellants' claims were barred by, *inter alia*, "estoppel." **See** Answer, New Matter, and Notice to Plead, 6/5/18, ¶ 18; **see also**

---

[3] At various stages of the proceedings before the trial court, Riad Trust was listed as an additional co-plaintiff, and is described in Appellants' Complaint, alongside Riad Holdings, as "a Delaware Corporation owned solely by Riad." Complaint, 9/12/17, ¶ 6. Riad Trust is not listed as a co-appellant in Appellants' brief, nor is Riad Trust listed on Appellants' Notice of Appeal.

*Hopewell Estates, Inc. v. Kent*, 646 A.2d 1192, 1194 (Pa. Super. 1994) (stating that the affirmative defense of collateral estopped must be pleaded in an answer as new matter). Further, our review discloses that the District Court granted Wells Fargo's Motion for summary judgment in the Federal Suit more than two years after Wells Fargo had filed its Answer, New Matter, and Affirmative Defenses in June 2018, and six months after Wells Fargo filed its Motion for summary judgment with the trial court.[4] Consequently, Wells Fargo could not have known that Appellants' identical claims would be resolved by the District Court at the time it filed its pleadings and subsequent Motion for Summary Judgment.

With regard to Appellants' argument that entry of summary judgment as part of the Federal Suit was not a final judgment for the purposes of collateral estoppel, "[a] judgment is deemed final for purposes of *res judicata* or collateral estoppel unless or until it is reversed on appeal." *Shaffer v. Smith*, 673 A.2d 872, 874-75 (Pa. 1996) (citation omitted). "[F]or purposes of issue preclusion …, 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded

---

[4] In its Motion for summary judgment, Wells Fargo specifically asserted that Appellants were collaterally estopped from pursuing the Notarization Claims, as they had already been litigated as part of the Watkins Action. Brief in Support of Motion for Summary Judgment, 2/25/20, at 4-9. Appellants addressed this argument in their Memorandum supporting their Response to Wells Fargo's Motion for summary judgment. *See* Memorandum, 5/11/20, at 16-24.

conclusive effect." ***Id.*** at 875 (quoting Restatement (Second) of Judgments § 13 (1980)).

Here, the claims at issue in the Federal Suit—the Wire Transfer Claims and the Cashier's Check Claims—were fully adjudicated when the District Court entered its Order granting Wells Fargo's Motion for summary judgment as to all of the Wire Transfer Claims and the Cashier's Check Claims. ***See*** Order, 8/6/20, at 1-2. The record confirms that the sole claim in the Federal Suit to survive summary judgment was Appellants' claim related to the unauthorized use of Riad's Wells Fargo account, in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. In its Order, the District Court stated the following: "As the [District] Court granted summary judgment as to [the Cashier's Check Claims] in their entirety and Count 6 with respect to the unauthorized wire claims, the cashier's check and deposit claims … in favor of [Wells Fargo], no evidence on any of these claims will be introduced at trial." Order, 8/6/20, at 2. In light of the foregoing, the District Court's Order was "sufficiently firm" to be accorded conclusive effect, and its Order has not been reversed on appeal. ***See Shaffer***, ***supra***.

Finally, regarding Appellants' contention that the trial court should have stayed the instant matter, we discern no abuse of discretion by the trial court in concluding that Appellants, by embarking in years-long, duplicative litigation in federal court, with extensive discovery and motions practice, fully

and fairly litigated the Cashier's Check Claims and the Wire Transfer Claims. *See* Trial Court Opinion, 9/30/20, at 6.

In summary, our review of the record, as well as the District Court's Opinion in support of its Order, confirms the trial court's conclusion that Appellants are collaterally estopped from pursuing the Wire Transfer Claims and the Cashier's Check Claims in their state court action. *See E.K.*, *supra*.

Additionally, because Appellants are collaterally estopped from pursuing the Wire Transfer Claims and the Cashier's Check Claims, we need not address Appellants' fourth, fifth, and sixth claims, which involve Appellants' duplicative contentions that the District Court—and as a result, the trial court—improperly calculated the accrual dates of Appellants' causes of action on the Wire Transfer Claims and the Cashier's Check Claims, in addition to Appellants' claim that the statute of limitations was tolled. Brief for Appellants at 14-62. We note that in its Opinion in support of its Order granting summary judgment, the District Court effectively analyzed and resolved the relevant accrual dates and tolling of the claims at issue. *See Riad*, 2020 WL 4530698 at **4-11. Under the principles of collateral estoppel, this Court cannot re-review issues already fully decided upon by another court. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 107 (1991) (stating that "a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substances to the one he subsequently seeks to raise.").

In their final issue, Appellants baldly assert that Magana's notarial conduct constituted negligence *per se*, and that if Magana had properly performed her duties as a notary, then Appellants would have prevailed in the Watkins Action. Brief for Appellant at 72-74. However, Appellants' argument primarily focuses on their long-standing contention—already litigated and rejected as part of the Watkins Action[5]—that both Robert and Scott were actually present at the real estate closing. ***Id.*** Appellants do not identify, nor has this Court independently located, any case law or statute to support Appellants' contention that Magana's recording of signatures in her notary ledger constitutes negligence *per se*. ***See id.*** Finally, as the trial court notes in its Opinion, Appellants do not provide any argument to support their contention that Magana's notarial services, rather than Riad's fraud, resulted in Riad's damages. ***See Watkins***, ***supra***. Accordingly, because Appellants' appellate brief has "fail[ed] to … develop an issue in any [] meaningful fashion

---

[5] We also note that in the Watkins Action, this Court concluded that Riad had waived an issue related to Magana's notarial services, as he had raised the issue in his Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal, but did not raise the issue in his appellate brief. ***See Watkins***, 226 A.3d 665 (unpublished memorandum at *4 n.1). However, the issue raised by Riad in the Watkins Action focused on the trial court's apparent ambiguity over whether Magana attended or notarized the deed, rather than Riad's instant contention that she was negligent *per se* in her notarial duties.

capable of review," **see Commonwealth v. Woodward**, 129 A.3d 480, 509

(Pa. 2015) (citing Pa.R.A.P. 2119(a)), they have waived this claim on appeal.[6]

    Order affirmed.


Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/4/21</u>

---

[6] Even if Appellants had not waived this claim for our review, we would affirm on the basis of the trial court's Opinion, which determined that Appellants had not raised a triable issue of fact, as this Court had affirmed the trial court's determination that Riad's fraudulent conduct had been the cause of his damages. **See** Trial Court Opinion, 9/30/20, at 6-8; **see also Watkins**, 226 A.3d 665 (unpublished memorandum at *5-6).